## NOAH WACHTER v. PHŒNIX ASSURANCE CO.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued January 15, 1890—Decided February 24, 1890.

[To be reported.]

1. A principal is bound by the acts or conduct of his agent within the scope of his apparent authority, unless done with knowledge or notice in the person dealing with him of the actual extent of the agent's authority: Griswold v. Gebbie, 126 Pa. 353; Hubbard v. Tenbrook, 124 Pa. 291.

2. An insurance company that approves the act of a soliciting agent in indorsing upon a fire policy a clause making it payable to a mortgagee, thereby accredits such agent as authorized to represent it, at least as to that particular risk; and if such agent afterward assure the parties that nothing more need be done to secure the mortgagee, in the event of a sale by the mortgagor, the company will be estopped from alleging the contrary.

3. The court must submit a case to the jury when there is a conflict of testimony, although the testimony tends to raise an estoppel against one of the parties; but if all the facts essential to create the estoppel are admitted or established beyond all controversy, there is no necessity for such submission, as it then becomes the province of the court to declare the law applicable to such facts.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 37 July Term 1889, Sup. Ct.; court below, No. 345 December Term 1887, C. P. No. 3.

On December 3, 1887, Noah Wachter brought assumpsit against the Phœnix Assurance Company of London, upon a policy of insurance against loss by fire. The defendant pleaded non-assumpsit and payment with leave.

At the trial on February 11, 1889, the following facts were shown: The defendant company was an English corporation, engaged in the business of insurance against fire within the United States. Its business in this country was under the direction of a general agency at New York city. Washington Irving, one of its special agents, had the general control in its New York office of the business in the state of New Jersey.

### Statement of Facts.

In the year 1885, Tuller & Wanser of Vineland, New Jersey, were the agents of the company for the southern part of that state, and J. P. Spofford, of Holly Beach, N. J., was under appointment by Tuller & Wanser, ratified on behalf of the company by Irving, to act as a solicitor of insurance of said company. Irving testified that Spofford had no authority to make contracts for the company, his authority being limited to soliciting applications for policies.

During the summer of 1885, Charles Otto Wade erected a cottage upon a lot of ground owned by him, at Anglesea, N. J. While it was in process of erection Spofford went to Wade and asked him to have the building insured in the defendant company. Wade agreed to take a policy for $1,000, and such a policy was issued on December 24, 1885, by Tuller & Wanser at Vineland, and delivered to Wade through Spofford, who collected the premium upon it. The policy contained the following provisions :

" 1. If the property be sold or transferred . . . . . or any change take place in title or possession . . . . . whether by legal process or voluntary transfer, or conveyance . . . . . this policy shall be void."

" 6. The use of general terms, or anything less than a distinct, specific agreement, clearly expressed and indorsed on this policy, shall not be construed as a waiver of any printed or written conditions or restrictions therein."

" 8. It is a part of this contract that any person, other than the assured, who may have procured this insurance to be taken by this company, shall be deemed to be the agent of the assured named in this policy and not of this company, under any circumstances whatever, or in any transactions relating to this insurance.

" 9. If this policy is made payable in case of loss to a third party, or held as collateral security, the proof of loss should be made by the party originally insured, unless there has been an actual sale of the property insured. All fraud, or attempt at fraud, by false swearing or otherwise, shall cause a forfeiture of all claim on this company under this policy."

Some time after the date of the policy, Wade borrowed from Noah Wachter $850, upon a mortgage of the property covered by the policy, and went to Spofford and requested that the

policy be transferred to Wachter as mortgagee.   Spofford took the policy and said he would attend to it.   Subsequently, Wade and Wachter went together to see Spofford about the matter of a transfer.   Spofford then took the policy out of his desk and in the presence of Wade and Wachter wrote upon it the words, " loss, if any, payable to Noah Wachter, mortgagee," handed the policy back to Wade, and said it was all right now. Wade at once handed it over to Wachter.

Spofford reported the indorsement of this clause upon the policy to Tuller & Wanser, who made an entry thereof upon their books and forwarded a report of it to the general office at New York.   The latter report was received at New York in February, 1886, and upon its receipt, the clause " loss, if any, payable to Noah Wachter, mortgagee," was entered upon the company's books in the New York office.

In the summer of 1886, Wade sold his property to one Dougherty, subject to Wachter's mortgage, the sale being consummated by a deed dated June 2, 1886.   Wade went to Spofford at the time of making this sale, told him of it and asked him about making a transfer of the policy.   Spofford replied, " You don't need to do that, because it is already transferred to Wachter as mortgagee."   Wade said, " Then it is all right as it is, is it ? "   Spofford answered that it was, and nothing more need be done about it.

Irving testified that the company had in use a blank form containing a mortgagee clause, known as a " rider to policy," providing that no act of the mortgagor in violation of the conditions of the policy should affect the mortgagee ; and, for attaching such a clause to a policy, taken out by a mortgagor and desired to be used as collateral security for the payment of a mortgage, there was no extra charge.

The insured building was totally destroyed by fire during the term of the policy, on December 5, 1886, being at that time in the possession and occupancy of Dougherty.   Proofs of the loss were sent to the company by Wachter.   Soon after, he was informed by an agent of the company that new proofs must be executed by himself and Wade.   This was done.   In the second set of proofs the ownership of the property was stated to be in Wade.

The plaintiff was offered as a witness to prove that this

statement was understood by him at the time of it to mean that Wade was the owner of the property when the policy was issued, and that there was no fraud intended in the statement as to ownership in the second proofs of loss; that this misstatement was a simple mistake.

Objected to by the defendant.

By the court: Objection overruled; exception.[1]

Witness then testified as follows: The first proofs of loss were made by Mr. Black in Camden and he sent them on to the company. (Proofs of loss shown witness.) Yes, these are the papers. I signed them.

Q. What was said when the proofs were signed? A. Some time after the first proofs were sent, Mr. Black sent for me again, and said the company required Wade to sign the proofs, because the policy was in Wade's name. I hunted up Wade, and got him afterwards to go over to Camden with me. I think Mr. Leaming was in the office that time. Leaming was Black's partner; he said the company wanted Wade to sign too, and he had made out the second proofs; he told us the second proofs were just like the first, only they were to be signed by both Wade and myself. They were not read to us. He explained what they were. I understood they were like the first ones, and we both signed them.

At the close of the testimony, the defendant requested the court to charge the jury:

1. The insurance being upon the interest of Wade, the mortgagor and owner, if you find that he had parted with that interest before the fire, no loss was sustained by him and none is recoverable by his appointee, and your verdict should be for the company defendant.[2]

2. The defendant contracted with Wade, and not with the plaintiff. The company agreed, upon the performance of certain conditions, to pay for Wade to the plaintiff certain money. There is in evidence a deed from Wade to one Dougherty, made prior to the fire. If you find this to be the deed of Wade, its effect was to devest him of his interest as owner, and in accordance with the conditions of the policy, the insurance immediately terminated, and your verdict should be for the company defendant.[3]

3. If you find from the evidence that Wade violated any

other of the conditions of the policy, either as to the owner-
ship of the property, encumbrances thereon, its occupation in
such a way as to increase the risk, or by false representations
in the proofs of loss, then his appointee, Wachter, cannot re-
cover, and your verdict should be for the company defendant.[4]

4. The execution and validity of the deed from Wade to
Dougherty are not disputed; therefore, I instruct you that at
the time of the fire Wade had no interest in the property de-
stroyed, and his appointee and mortgagee cannot recover in
this suit. Your verdict must be for the defendant.[5]

5. As the proofs of loss did not show the true ownership of
the property, your verdict should be for the defendant.[6]

6. Under all the evidence in this case, your verdict must be
for the defendant.[7]

The court, FINLETTER, P. J., refused these points, and in-
structed the jury to find a verdict for the plaintiff, subject to
the opinion of the court in banc upon two questions of law re-
served, to wit: (1) Whether the misstatement in the second
proofs of loss " that the property insured belonged to Charles
Otto Wade, and no other person had any interest therein ex-
cept Noah Wachter, whose only interest was as mortgagee,"
whereas the said Wade had conveyed the property to Dough-
erty by deed dated June 2, 1886, duly recorded, avoided the
claim under the policy; and (2) Whether the sale of the pro-
perty and the change in the title by the conveyance by Wade
to Dougherty, under the deed of June 2, 1886, and the taking
of possession by Dougherty thereunder, avoided the policy.[8]

The jury rendered a verdict in favor of the plaintiff for
$980.50, subject to the questions of law reserved. Subse-
quently the court, after argument, discharged a rule for a new
trial and entered judgment for the plaintiff, FINLETTER, P. J.,
filing an opinion in part as follows:

We might very well regard Spofford as the agent of the de-
fendant for all that was said and done in reference to the
assignment of the policy. It is not, however, necessary to con-
sider his general agency, or the extent of it. The company
confirmed his act in altering the policy and delivering it in
that condition to Wachter. He thereby became their agent
for this particular matter, and what he said and did in reference
to it was binding upon them.

Arguments.

The purpose of the alteration, as is manifest from the evidence, was to secure the mortgagee in the sum of $850. This was made known to Spofford, and he informed them that this purpose was effected by the alteration. Can there be any doubt that the words, "loss, if any, payable to Noah Wachter," induced Wachter and Wade to believe that the mortgage loan was thereby secured, and that this confidence was confirmed by what Spofford said to them?

If there is any ambiguity about the words themselves, or their effect, they should be construed most favorably to the plaintiff. The company knew that this was not the usual way in which a mortgagee was secured. When they changed the form, it was their duty to see that no one who might have an interest in the matter was misled. Even upon the trial, and argument upon the rule, they have not attempted to explain what the alteration meant, or was intended to secure, or why they have departed from their regular form in securing a mortgagee.

We have come to the conclusion that the policy as altered by the defendant was intended, either to make a new and independent contract with the plaintiff, or to give him the position and advantage which would have resulted to him if the policy had been assigned to him in the usual way. If we are correct as to this, it is not necessary to consider the question involved in the notice of loss. Judgment is entered for the plaintiff upon the points reserved.

Thereupon the defendant took this appeal, specifying that the court erred:

1. In admitting the plaintiff's offer.[1]

2–7. In not charging as requested in the defendant's points.[2 to 7]

8. In instructing the jury to find for the plaintiff, subject, etc.[8]

*Mr. Isaac Elwell* and *Mr. Samuel Dickson* (with them *Mr. William McGeorge, Jr.*), for the appellant:

1. It is conceded that Wade sold the insured property prior to the fire, and had no interest therein when the loss occurred. Under the conditions specified in paragraph 1 of the policy, his

conveyance to Dougherty ipso facto rendered the policy void. Therefore, the building was not covered by it at the time of the fire. The contract was made and to be performed in New Jersey, and hence the law of New Jersey governs in construing its terms and conditions. Under the decisions in that state the clause in regard to making payment to the mortgagee was not an assignment of the policy, and did not merge or extinguish the contract with the insured: Martins v. Insurance Co., 9 Vroom 142. It was simply a contract by the company to pay to the mortgagee, as the appointee of the insured, according to the terms of the appointment, whatever might be due to the insured on the policy; the mortgagee held subject to the conditions of the policy, and was under a liability to have his rights defeated by a breach of the conditions of the insurance by the insured: State Ins. Co. v. Maackins, 9 Vroom 564; Warbasse v. Insurance Co., 13 Vroom 206.

2. The same rule has been laid down in Pennsylvania and elsewhere: Hageman v. Insurance Co., 38 Leg. Int. 375; Grosvener v. Insurance Co., 17 N. Y. 371; State M. F. Ins. Co. v. Roberts, 31 Pa. 438; Imp. F. Ins. Co. v. Dunham, 117 Pa. 474; Carpenter v. Insurance Co., 16 Pet. 495; Friemansdorf v. Insurance Co., 1 Fed. R. 68; Bilson v. Insurance Co., 3 Phila. 547; Wood on Fire Insurance, §§ 342, 346, p. 863; Flanders on Fire Insurance, 489. The clause written on this policy is not an unusual way of securing a mortgagee, as the opinion of the court below assumes. It is to-day a customary way of effecting such security, and it has been used for years, as is evidenced by decisions on similar indorsements in cases that arose thirty years ago. It would have been perfectly good to secure Wachter, if Wade had not subsequently forfeited his own rights, and consequently his appointee's rights, by a conveyance of his entire interest in the property to a stranger. No answer to the claim that the policy was thus avoided is attempted, except by the testimony that Spofford, the company's solicitor, told Wade no transfer of the policy was necessary.

3. That testimony does not relieve against the forfeiture. The policy expressly and unqualifiedly provides that it shall be void upon a change of title, and there is no provision in such case for saving a forfeiture by obtaining the written consent of the company. But, even if the sale could be consented

to or ratified by the company, no proper consent or ratification is shown: (a) because the policy provides, in paragraph 6, that nothing but a written indorsement on the policy itself shall be construed to be a waiver of any of its conditions; (b) because Spofford, being a mere solicitor or broker, without authority to issue a policy or make a binding contract for the company, was not such an agent as could bind the company by assuring Wade that the policy was all right and nothing further was needed: Flanders on Fire Insurance, 121; Martins v. Insurance Co., 15 Vroom 274; Titus v. Railroad Co., 17 Vroom 420; Insurance Co. v. Johnson, 23 Pa. 72; Mitchell v. Insurance Co., 51 Pa. 410. Moreover, the courts are slow in finding a change or waiver of the conditions of a written contract upon parol proof: Dewees v. Insurance Co., 6 Vroom 372. At least two witnesses, or their equivalent, are required: Yeisley v. Bundel, 1 Mona. 67; s. c. 22 W. N. 462.

4. It is admitted that the first proofs of loss were defective, and the second proofs contained, under the oaths of both Wade and Wachter, a misstatement as to the title. This "false swearing" caused a forfeiture, under paragraph 9, of all claim upon the policy. The testimony admitted at the trial, to the effect that this misstatement was a mistake, and no fraud was intended, was wholly irrelevant. The question is not what Wachter understood, but what he did. He swore to a misstatement. The fact misstated was a material and vital one, bearing directly upon the existence of the policy as a valid and binding obligation. Wachter had the policy and must be presumed to know its conditions, and Wade of course knew that he had sold to Dougherty. They have no right now to attempt to explain why they made what is plainly a false statement under oath. At all events, a correction could not be made for the first time upon the trial: Campbell v. Insurance Co., 10 Allen 213; Jones v. Insurance Co., 7 Vroom 41.

*Mr. Frederick Gaston* (with him *Mr. John E. Faunce*), for the appellee:

1. This policy was obtained from Spofford, and all the dealings in relation to it were had with him, as agent of the company. He undoubtedly represented the company when he wrote on the policy the clause making the loss payable to

Wachter, for the company recognized and ratified that act by entering the alteration of the policy on their official register. If, therefore, Wachter lost his right to indemnity, it was lost solely through Spofford's neglect of duty; and if the company is entitled to a forfeiture of the policy as to Wachter, it acquired that right solely through the negligence of its own agent, clothed by it with such apparent authority as induced Wade and Wachter to rely on his representations. In their argument the defendant's counsel appear to mistake the point at issue. The question is not whether Spofford had authority to make the declaration relied on, but whether in the circumstances Wachter had a right to rely upon it.

2. The principle laid down by the opinion of the court below upon this point, is sustained by the decisions: Griswold v. Gebbie, 126 Pa. 353; Hubbard v. Tenbrook, 124 Pa. 291; Mentz v. Insurance Co., 79 Pa. 475. The policy having been executed in New Jersey, the case is ruled by the decisions in that state holding that the company is estopped by the statement of an agent that the policy is all right, upon the faith of which the assured has acted: Redstrake v. Insurance Co., 15 Vroom 294; Insurance Co. v. Building Ass'n, 14 Vroom 65. Moreover, the contract must be construed liberally in favor of the assured, and a condition creating a forfeiture will never be extended beyond the strict words of the policy: Carson v. Insurance Co., 14 Vroom 300 (39 Am. Rep. 584). In Hageman v. Insurance Co., 38 Leg. Int. 375, relied on by the defendant, no notice whatever of the change of title was given until after the fire, whereas in the present case the company's agent was immediately notified, and that nothing further was done was due to his assurance that nothing more was necessary.

3. As to the misstatement in the second proofs of loss, we submit: (a) that if the conveyance by Wade did not of itself cause a forfeiture of Wachter's rights, the misstatement of ownership was upon an immaterial point and would not cause a forfeiture; (b) that a bare misstatement, without a known and intentional false swearing, is not sufficient to sustain the defence under the language of the policy: Carson v. Insurance Co., 14 Vroom 303 (39 Am. Rep. 584); Franklin Ins. Co. v. Updegraff, 43 Pa. 350; (c) that the fire settled the rights of the parties, and, however competent it was for the

company to make the contract of insurance dependent upon a condition, it was not competent for it to limit the legal effect of a claim thereunder after loss: West Branch Ins. Co. v. Helfenstein, 40 Pa. 290; and (*d*) that as the misstatement occurred in the second proofs of loss, after the company was already possessed of all the facts, it was not misleading.

OPINION, MR. JUSTICE STERRETT:

The facts upon which this contention appears to hinge are few, and undisputed.

In December, 1885, the Phœnix Assurance Company, defendant below, issued a policy of insurance to Charles Otto Wade, for $1,000, on his frame cottage at Anglesea, N. J. The risk was solicited and policy delivered to the insured, by J. P. Spofford, of Holly Beach, who, in that regard at least, acted for the company. Shortly afterwards, Wade borrowed from Noah Wachter, the plaintiff below, $850, secured by a mortgage of the cottage property, supplemented by the insurance policy. For the purpose of having the latter properly indorsed or transferred, so that, in the event of loss by fire, the insurance money would inure to the benefit of the mortgagee, Wade called on Spofford, informed him of the transaction, and requested that the policy be properly transferred to Wachter, the mortgagee. Spofford took the policy, and promised to have it attended to. Before anything further was done, however, Wade and Wachter, together, went to see him in regard to the matter. Spofford took the policy out of his desk, and wrote in it the words, "Loss if any, payable to Noah Wachter, mortgagee," and then handed it to Wade, saying, " That is all right now ;" and thereupon Wade delivered it to Wachter. The action of Spofford in thus changing the policy was recognized and approved by the agent of the company at Vineland, N. J., and also by the New York agent. The latter testified as follows: " The clause in this policy, 'loss, if any, payable to Noah Wachter, mortgagee,' was entered on our books in the New York office on report of our Vineland agency. It was reported to us some time in February, 1886." Frank E. Wanser, an employee in the office of the Vineland agency, was called by the company and testified thus: " The policy stood on the register in our office in the name of Charles Otto Wade,—loss,

if any, payable to Noah Wachter, mortgagee ; and I so reported
the policy to the home office, in New York. This insurance
was effected by J. P. Spofford, our solicitor at Holly Beach.
Spofford was in our employ." Washington Irving, the New
York agent, called by the company, further testified that the
insurance was " effected by Tuller & Wanser, the agents at
Vineland, through solicitor at Holly Beach ; that a mortgage
clause, called 'a rider to the policy,' was in use by the com-
pany, containing the provision that no act of the mortgagor ·
violating conditions shall affect the mortgagee," and that
" there is no extra charge for attaching such a clause."

When Wade conveyed the property to Dougherty, he went
to Spofford, informed him of the sale, and inquired of him in
regard to the transfer of the policy of insurance to Wachter.
In the language of the witness : " He (Spofford) said, 'You
don't need to do that, because it is already transferred to
Wachter as mortgagee ; ' and I said, ' Then it is all right as it
is, is it ? ' and he said, ' Yes ; you need not do anything more.' "
Satisfied with that assurance, nothing more was done by either
Wade or Wachter. They rested in the belief that the policy
was so transferred that, in the event of a loss by fire, Wachter
would be entitled to demand the insurance money, and apply
it to payment of the mortgage debt.

The cottage was afterwards destroyed, and the insurance
company having refused to pay the loss, this suit was brought
by Wachter to compel payment. The company then sought
to impale him on several sharp points, one of which is that by
the sale to Dougherty without a proper transfer of, or indorse-
ment on the policy, the latter became null and void.

In view of the undisputed facts above recited, the defence is
a most ungracious one ; a defence which, under the circum-
stances, no reputable underwriter would think of interposing.
The insured and the mortgagor both appear to have acted in
entire good faith. There is not a particle of evidence to indi-
cate anything to the contrary. When the mortgage was given,
and they wished to have it so changed that the mortgagee
might hold it as an available security for the loan, they both
went together to Spofford, as the agent of the company, and he
wrote into the policy the words above quoted, and thereupon
it was delivered to the mortgagee. The act of Spofford in

writing into the policy the clause referred to, was recognized and approved by the company. Why, then, should it not be estopped from denying his authority to do what was afterwards done in relation to the same policy as a continuing security in the hands of the mortgagee? If, instead of going to Spofford for the purpose of having the policy properly transferred or indorsed, so that it would inure to the benefit of the mortgagee, notwithstanding the conveyance to Dougherty, the insured and his mortgagee had applied to the general agent of the company in New York, and he had assured them, as Spofford did, that nothing further to that end was necessary; that, for the purpose of indemnifying the mortgagee, the policy was already properly transferred, etc., it cannot be doubted that the company would be estopped from alleging anything to the contrary: Mentz v. Insurance Co., 79 Pa. 475. In that case, the company's agent told the assured that the proper indorsement on the policy had been made. It was held that his declaration operated as an estoppel, because it lulled the assured " to sleep, by the assurance that the condition of the policy had been complied with and that the indemnity was secured."

As was well said by the learned president of the court below, the company confirmed Spofford's act in altering the policy in question and delivering it in that condition to Wachter. It thereby accredited him as its agent, at least as to that particular risk; and therefore what he said in reference to the policy, etc., was as binding on the company as if he had been its general agent. It clothed him with at least apparent authority in regard to the policy in question; and, as to parties dealing with him on the faith of that, it should not be permitted to deny his authority to act as he did: Hubbard v. Tenbrook, 124 Pa. 291. In Griswold v. Gebbie, 126 Pa. 353, our Brother MITCHELL recently said: " The general rule that a principal is responsible for the misrepresentations of his agent, within his authority, is beyond question; and the better opinion is, that, as to third parties affected by his acts or words, it is the apparent scope of his authority, and not his actual instructions that must govern. That is the basis on which the business of the world, in the present day, is transacted, and the rule should be enforced in a liberal spirit, with regard to the actual habits of the community." Other authorities to the same effect might be

cited, among which are: Millville etc. Ins. Co. v. Mechanics' etc. Ass'n, 43 N. J. L. 652; Redstrake v. Insurance Co., 44 N. J. L. 294; Wood on Insurance, § 392. The learned author of the work last cited says: "It would be disastrous to commercial as well as other interests if a person, by acting through the agency of another, could shield himself from liability for such person's acts ad libitum. Fortunately, no such rule exists; and he who intrusts authority to another, in whatever department of business, is ,bound by all that is done by his agent within the scope of his apparent power, and cannot screen himself from the consequences thereof upon the ground that no authority in fact was given him to do the particular act, unless the act was clearly in excess of his apparent authority, or was done under such circumstances as put the person dealing with him upon inquiry as to the agent's real authority."

Perhaps it may be said that, while the evidence referred to tends to create an estoppel, the question of Spofford's real or apparent agency in the premises, etc., should have been submitted to the jury under proper instructions. That would be so, if there was any conflict of testimony, but there is none. All the essential facts are clearly and conclusively established by uncontroverted evidence, part of which was introduced by the company itself. When the facts are admitted, or established beyond all controversy, as they are in this case, there is no necessity for submission to a jury. It then becomes the province of the court to declare the law applicable to such facts. That was done in this case; and, for reasons above suggested, we think there is nothing in the record that calls for the reversal of the judgment.

Judgment affirmed.