AUTOMOBILE INS. CO. OF HARTFORD, CONN., v. GUARANTY SECURITIES CORP. et al.

(District Court, S. D. New York. February 10, 1917.)

1. Torts ☞12—Inducing Another to Break Contract.

It is a tort for one person to induce another to break his contract with a third.

[Ed. Note.—For other cases, see Torts, Cent. Dig. § 13.]

2. Injunction ☞63—Subject of Relief—Contract—Inducing Breach.

Where the defendant insurance company sought to induce another to break its contract with complainant and enter into a contract with it, defendant will be enjoined though the contract involves no distinctly personal relation.

3. Injunction ☞136(2)—Subjects of Protection—Contracts—Breach.

Defendant company, being engaged in the business of financing the sale at retail of automobiles by taking over notes for deferred payments and advancing money thereon to the dealers who had effected the sales, entered

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

into a contract with complainant to insure the machines for a period of three years, the contract providing that all new automobiles should be insured and that the provisions in the policies with respect to the right of cancellation should be waived. Before the end of the term, defendant repudiated its contract and sought to enter into an arrangement with another insurer to enable it to carry on the same business. Under the policies issued pursuant to the contract, many adjustments would be necessary, and the second insurer might, if allowed to supplant complainant, adjust its losses on a different basis, so that the damages suffered would be almost impossible of ascertainment. *Held*, that in such case, though defendant would not be guilty of a tort in breaking its contract, a preliminary injunction may be issued to restrain the breach.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 306.]

4. INSURANCE ⬥125(2)—FIRE POLICIES—WHAT LAW GOVERNS.

The laws of the state in which an insurance company writes its policies govern the contracts.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 174.]

5. INSURANCE ⬥125(1)—FIRE INSURANCE—STATUTES—CONSTRUCTION.

Though a contract for the insuring of motor cars was entered into in Ohio, a provision therein waiving the provisions in the policies for cancellation is valid, the insured property not being located in that state; Gen. Code Ohio, § 9577, declaring that an insurance company doing business under the laws of Ohio, which issues policies covering property located therein and on such policies receives cash payments of premium, shall insert in every policy an obligation to cancel it upon the written request of the person insured, only preventing such waiver as to property located in Ohio.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 173.]

6. INSURANCE ⬥385—FIRE POLICIES—CONDITIONS.

Gen. St. Conn. 1902, § 3497, fixing standard form of policy containing a cancellation clause but authorizing the addition to the policy of separate slips or riders modifying the terms, permitted a Connecticut insurance company which entered into a contract to insure many automobiles, to waive the cancellation clauses.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1020–1023.]

7. INSURANCE ⬥385—FIRE POLICIES—CANCELLATION—AGREEMENT.

Insurance Law, N. Y. (Consol. Laws, c. 28) § 122, declaring that any corporation or company transacting the business of fire insurance shall cancel any policy upon the request of the insured or his legal representative, does not prevent an insurance company, insuring motor cars for the benefit of a company engaged in financing the retail sale of such cars on credit which received notes for deferred payments, from entering into an agreement waiving the cancellation clauses of the policies; the section not affecting the provision save in so far as it allowed cancellation of the policies by the owners of the cars.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1020–1023.]

In Equity. Bill by the Automobile Insurance Company of Hartford, Connecticut, against the Guaranty Securities Corporation and another. Preliminary injunction granted.

Hartwell Cabell, of New York City, for complainant.

Murray, Prentice & Howland, of New York City (Charles P. Howland and Charles F. Quantrell, both of New York City, of counsel), for defendant Guaranty Securities Corp.

AUGUSTUS N. HAND, District Judge. The defendant the Guaranty Securities Company is engaged in the business of financing the

sale at retail of automobiles. Their plan consists in the taking over of notes of deferred payments and the advancing of money on said notes to the dealer who has effected automobile sales. To carry out such a plan in a businesslike way required protection of the automobiles against fire and theft until the purchaser had paid for them, and to that end the Guaranty Securities Company of Toledo, Ohio, entered into a contract in Ohio with the complainant. This contract, with certain amendments, was thereafter continued with the Guaranty Securities Corporation, a New York company, which had succeeded to the business of the Ohio company. The form of insurance policy attached insured the Guaranty Company and the Commercial Savings Bank & Trust Company of Toledo, and its successors in trust as trustees. The successor in trust of the Commercial Savings Bank & Trust Company of Toledo is the Metropolitan Trust Company of New York, so that the contract is now between the complainant, which is a branch of the Ætna Insurance Company of Connecticut, the Guaranty Securities Corporation, a New York company, and the Metropolitan Trust Company, as trustee. Under this contract the Guaranty Securities Corporation insured automobiles which had been financed by that company.

The Guaranty Securities Corporation, in order to deal with the notes secured by the automobiles, entered into a trust agreement with the Metropolitan Trust Company, whereby the latter was to hold the trust notes as trustee for the parties interested therein, together with a duplicate participation certificate in the insurance furnished by the complainant; another certificate being held by the Guaranty Securities Corporation covering each automobile.

The contract of insurance contained an indorsement reading as follows:

"*Indorsement.*—As evidenced by the insured's acceptance of this indorsement and the policy to which it is attached, and of which it is made a part, it is understood and agreed by all the parties hereto as follows: * * *

"(9) That this insurance contract is written for a period of not less than three years from December 1, 1915, and, in consideration of the reduced rates of premium at which it is written and of the waiver of conditions 'f' and 'n' of the policy as hereinafter provided, that the Guaranty Securities Company of Toledo, Ohio, its successors and assigns and other parties in interest will in good faith require and undertake to provide coverage hereunder as respects all new automobiles whose sale at retail within said period of not less than three years is or shall be wholly or in part financed by them (then follows an exception which is not germane to the discussion).

"(10) That condition 'f' of the policy is hereby waived in its entirety, and condition 'n' is hereby waived from December 1, 1915, to December, 1916, except as provided in condition '9' above, but the insurance herein be subject otherwise to all conditions and stipulations of the policy, except so far as same may be at variance with the conditions and provisions of this indorsement."

After the foregoing contract was made, differences arose between the Guaranty Securities Corporation and the complainant, and on January 4, 1917, the Securities Corporation mailed a notice of cancellation of the policy to become effective January 15th. The Securities Corporation had also prior to that time notified the complainant that it would refuse to recognize the latter's exclusive rights under the con-

tract for automobile insurance, and that it had received an offer from the defendant the London & Lancashire Fire Insurance Company, Limited, covering automobiles to be financed by the Guaranty Securities Corporation, and that it proposed in the future to insure with the London & Lancashire Fire Insurance Company, Limited, and had been solicited for said business by the latter. It is quite likely that the general officers of the London & Lancashire Fire Insurance Company, Limited, did not know of the contract with the complainant; but their agents who solicited the business and arranged the preliminaries apparently had full knowledge.

Upon the foregoing state of facts, the complainant has moved for an injunction pendente lite restraining the Guaranty Securities Corporation from taking out insurance with other companies and restraining the London & Lancashire Fire Insurance Company, Limited, from carrying out any arrangement as to insurance with the Securities Corporation.

The indorsement attached to the contract for insurance between the complainant and the Guaranty Securities Corporation, which I have quoted above, was made for an adequate consideration, and the only questions for this court are: (1) Whether ground appears under any circumstances for equitable relief, and (2) whether the agreement of insurance can be canceled.

[1, 2] Without fully discussing the authorities submitted by counsel, it is sufficient to say that the Circuit Court of Appeals of this circuit has recently expressed its opinion in the case of American Malting Co. v. Keitel, 209 Fed. 351, 359, 126 C. C. A. 277, 285, to the effect that it is a tort for A. to persuade B. to break his contract with C., and that the federal courts have in numerous cases issued injunctions to prevent the breach of contracts even though they were ordinary business contracts involving no employment, or other distinctly personal relation. Judge Rogers there said:

"We fail to discover any satisfactory distinction between an attempt to induce employés to break a contract of employment and an attempt to induce customers to break their business contracts for the purchase or sale of goods."

See, also, Bitterman v. Louisville & Nashville R. Co., 207 U. S. 205, 28 Sup. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693; Dr. Miles Medical Co. v. Park & Sons Company, 220 U. S. 373, 31 Sup. Ct. 376, 55 L. Ed. 502.

I think it clear that the defendant the London & Lancashire Fire Insurance Company, by its agents, knew of the contract of the plaintiff to furnish insurance to the Guaranty Securities Corporation, and persuaded the latter company to break it and enter into a contract with itself. It therefore has committed a tort and, if the contract between the original parties subsists, should be enjoined.

[3] The situation of the Guaranty Securities Corporation is somewhat different, at least in theory, from that of the London & Lancashire Fire Insurance Company, Limited. It is very likely true that it would commit no tort in breaking its contract with the complainant. This is certainly so unless by reason of its confederation with the Lon-

240 F.—15

don & Lancashire Fire Insurance Company, Limited, it might be regarded as a joint tort-feasor, but it should be enjoined from breaking any contract like the one under consideration (if the same subsists) for other reasons. The contract has attempted to establish a relation between the complainant and the Guaranty Securities Corporation that, while not personal, is peculiar. The writing of insurance by the complainant under the contract involves a multitude of details and, covering as it does a period of three years, would doubtless involve a great number of adjustments of losses. If the London & Lancashire Fire Insurance Company, Limited, be allowed to enter into a similar contract, the result would be to leave all of the details relating to the performance of the new contract and the adjustment of losses thereunder in the hands of the Guaranty Securities Corporation and the London & Lancashire Fire Insurance Company, Limited. Moreover, the methods of adjustment of losses of the London & Lancashire Fire Insurance Company, Limited, might not be the same as those of the complainant, so that their profits might not be any certain basis of what the complainant would have made out of the original contract if it had been allowed to perform it. Furthermore, the failure on the part of the Guaranty Securities Corporation to insure each car with the complainant would apparently be a separate breach of the contract upon which the complainant might sue if it did not choose to submit to the delay and inconvenience of waiting until the three-year contract had expired.

I think the difficulty of proving damages, the multiplicity of litigation which would be necessary if the complainant choose to assert its rights to recover for each loss, and the embarrassment caused by the fact that the possession of all data as to profits would be in the possession of the defendants, are all justifications for the intervention of a court of equity in this case.

A somewhat similar situation arose in Standard Fashion Co. v. Siegel-Cooper Co. and Butterick Publishing Co., 157 N. Y. 60, 51 N. E. 408, 43 L. R. A. 854, 68 Am. St. Rep. 749. There a demurrer to a complaint was interposed. The Siegel-Cooper Company had agreed to sell the Standard patterns, and Standard fashion publications of the plaintiff for two years, and had contracted not to sell on its premises any other make of paper patterns. The Butterick Publishing Company, a rival of the plaintiff, had persuaded the Siegel-Cooper Company to contract with it and to break its contract with the plaintiff. The New York Court of Appeals there said, per Vann, J., in an opinion overruling the demurrer:

"Contracts which require the performance of varied and continuous acts, or the exercise of special skill, taste, and judgment, will not, as a general rule, be enforced by courts of equity, because the execution of the decree would require such constant superintendence as to make judicial control a matter of extreme difficulty. * * * But, even if, upon a trial of the action, specific performance of the contract in its entirety were refused as impracticable, still the bill should be retained as one permitting an injunction, in the sound discretion of the court, to restrain the defendants from violating the negative and severable covenant of the Siegel-Cooper Company that it would not 'sell, or allow to be sold on its premises during the duration of this (the) contract any other make of paper patterns' than those of the plaintiff."

The court went on to say that the complaint set forth a situation where specific performance might be granted, but that it was a matter of judicial discretion for the court after hearing the testimony whether the contract between the parties might involve such a complication of details and multiplicity of court orders that specific performance ought not as a matter of discretion to be enforced.

This case considerably resembles a case of unfair competition. The complainant entered into business arrangements with the Guaranty Securities Corporation involving all the automobile insurance of the latter for three years. A competitor in business, doubtless by offering more satisfactory terms, is securing this business and inducing the breach of the contract with the complainant. I think the injunction prayed for should be granted provided the insurance contract is not at an end.

[4, 5] The contract of insurance appears to have been made in Ohio. By section 9577 of the Consolidated Code of Ohio it is provided that:

"A fire insurance company doing business under the laws of this state which issue policies of insurance covering property located herein, and on such policies receives from the persons insured either cash payments of premium, or notes subject to assessment for payment of losses, or notes for the installments of premium, shall be required to insert in every policy so issued an obligation to cancel it, upon the written request of the person insured on conditions as provided in the next following five sections."

The complainant when writing insurance in Ohio was undoubtedly bound by the provisions of the Ohio law affecting the public policy of that state, and it is urged by counsel for defendant that the foregoing provisions of the Ohio law make every policy of insurance where that law applies subject to cancellation. If this is so, I have little doubt that the attempt of the parties to waive the provisions of the policy relating to cancellation for the alleged consideration of the reduced premium provided for in the contract was inoperative. I do not find, however, in the provision of the Ohio statute above quoted any attempt to lay down a general policy as to contracts made in Ohio even by Ohio corporations. The clause quoted apparently limits the requirements of a cancellation clause to policies covering property located in Ohio.

[6] I have examined the statutes of Connecticut, where the complainant was incorporated, and find that the standard form of policy, which contains a cancellation clause and must be used under the Connecticut laws, may contain upon separate slips or riders to be attached to the policy provisions adding to or modifying those contained in the policy. Section 3497, Connecticut General Statutes.

The waiver by agreement of the parties of the provision of cancellation would therefore seem to have been good under the Connecticut law.

[7] There is a provision in the New York statute which is contained in section 122 of the Insurance Law and reads as follows:

"Any corporation, person, company or association transacting the business of fire insurance in this state shall cancel any policy of insurance upon the request of the insured or his legal representatives, and shall return to him or to such representative the amount of premium paid, less the customary

short rate premium for the expired time of the full term for which the policy has been issued or renewed, notwithstanding anything in the policy to the contrary."

I do not see that this section affects the provision waiving a cancellation clause, although it would doubtless render policies written upon New York business capable of cancellation at the instance of the insured.

Under all the circumstances, I think a preliminary injunction should be granted upon the filing of a bond to be fixed in the order.