CARMEN v. FOX FILM CORPORATION et al.

(District Court, S. D. New York. June 30, 1919.)

1. CONTRACTS ⬷2—CAPACITY TO CONTRACT—LAW GOVERNING.
   The law of the state where a contract is executed applies in determining the capacity of the parties to contract.

2. INFANTS ⬷47, 58(1)—CONTRACT FOR SERVICES—DISAFFIRMANCE.
   Under New York Domestic Relations Law, § 2, a contract by a female infant for her services is not void, but voidable at her election, within a reasonable time after reaching majority.

3. TORTS ⬷12—INTERFERENCE WITH PERFORMANCE OF CONTRACT.
   If one maliciously interferes with a contract between two persons and induces one of them to break the contract to the injury of the other, the injured party may maintain an action against the wrongdoer, and where the act was intentional malice in law will be inferred.

4. INJUNCTION ⬷63—RESTRAINING INTERFERENCE WITH CONTRACT.
   A suit in equity may be maintained to restrain inducing breach of a contract by which defendant seeks to profit.

---

⬷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. MASTER AND SERVANT &#9901;&#8212;341&#8212;INDUCING BREACH OF CONTRACT OF EMPLOY-
MENT&#8212;DAMAGES.
    The measure of damages recoverable for inducing breach of a contract
· of employment of a moving picture actress is the salary complainant
    would have earned but for such interference.

In Equity. Suit by Jewel Carmen against the Fox Film Corporation
and the William Fox Vaudeville Company. Decree for complainant.

· On the 31st of July. 1917, the plaintiff, an actress who performed with con-
siderable success in motion pictures, contracted with the William Fox Vaude-
ville Company for her services for a period of two years commencing on the
17th of October, 1917, at $100 per week. The contract recites employment for
a period of six months, with the option to the defendant vaudeville company,
to employ her further for six months and until the employment extended over
a. period of two years, at stipulated compensation. The contract recites,
among other things, that "the services of the party of the second part herein
contracted for, are of an unique, peculiar and extraordinary nature and of
great value to the party of the first part, and that the talents and services
of the party of the second part cannot be replaced by the party of the first
part, and that the party of the second part will devote all of her time and at-
tention exclusively to the employment herein described. * * *"
On the same day, a second contract was entered into, to begin on the 17th
of October, 1919, at $175 per week, which was made with the Fox Film Cor-
poration. It contained the same provisions as the first contract referred to,
excepting that it extended over a different period of time. It was the pur-
pose of the contracting parties to provide employment for four years. It
appears that a contract of employment, for more than two years, is void un-
der the California law, and it is conceded that this was the reason for mak-
ing two contracts, one with each defendant, and one of which extended be-
yond the period of two years from the date of the contract. The contracts
were made, executed, and delivered in New York. The plaintiff was not of
age at the time of the execution of the contracts, and did not reach her ma-
jority until July 13, 1918. On July 15, 1918, as was her right, she disaffirmed
the contracts, sending a notice to the Fox Film Corporation and the William
Fox Vaudeville Company, which were duly received.
In February, 1918, she entered negotiations with another motion picture
producer, Frank A. Keeney, and on March 28, 1918, engaged her services to
begin on July 15, 1918. In April, 1918, Mr. Fox, who is the president of both
the defendant corporations wrote to Mr. Keeney, advising him that she was
under contract with his companies and could not legally contract with the
Frank A. Keeney Pictures Corporation. There was a conference and nego-
tiations between the defendants and the Keeney Picture Corporation, all with
the view of endeavoring to dissuade Keeney from carrying out his contract
with the plaintiff. Defendants took the position that the contracts were ex-
ecuted in California, and were therefore California contracts, and that the
plaintiff was bound to perform because under the statutes of California, at
18, a young woman becomes of age, and has the capacity to make a valid and
binding contract.
On August 30, 1918, Keeney secured an affidavit from the plaintiff, in which
she affirmed that the contracts were executed in New York. In September,
1918, Keeney featured the plaintiff in advertisements, in a leading motion
picture trade paper. In September, 1918, the defendant, William Fox Vaude-
ville Company, contracted with Frank A. Keeney and the Frank A. Keeney
Pictures Corporation, indemnifying Keeney and the Frank A. Keeney Pic-
tures Corporation from loss by reason of their refusal to carry out the terms
of the Keeney contract with the plaintiff. The agreement recites that the
defendant William Fox Vaudeville Company did engage the services of the
plaintiff to pose in motion pictures, that she agreed to do so, and was actually
doing so in the performance of her contract, but that the plaintiff claimed
the right to abrogate the contract because of her infancy, and signified her

intention so to do; that the defendants "resist her right so to do, and claimed the equitable right to enforce the performance of the contract of the said Jewel Carmen, and did give notice of its intention so to do to the parties of the second and third part, and did notify the parties of the second and third part that it would protect its right by proper suit in equity." And, further, "The party of the first part has requested the party of the second part to refrain from permitting the said Jewel Carmen to render her services under the contract between the party of the third part and the said Jewel Carmen, so that an adjudication of the rights of all the parties involved may be had."

After this contract was executed, Frank A. Keeney and the Frank A. Keeney Pictures Corporation refused to employ the plaintiff.

In this action, the plaintiff seeks to have it judicially determined that the contracts with the defendants are void, having been disaffirmed by her with reasonable diligence after she reached her majority. Further, that each of the defendants, their officers and agents, be enjoined and restrained perpetually from publishing or circulating any assertion, representation, or statement, direct or indirect, that the plaintiff is under contract with the defendants or either of them by reason of said contracts, and that the defendants be restrained from interfering or intermeddling with the plaintiff in following her profession or calling, and particularly from interfering or intermeddling or preventing the plaintiff from enforcing her rights under the contract with the Frank A. Keeney Pictures Corporation.

The defendants have not instituted any action to determine the right of the parties to these contracts.

Nathan Burkan, of New York City, for plaintiff.
Saul E. Rogers, of New York City, for defendants.

MANTON, Circuit Judge (after stating the facts as above). [1] The admission in the answer, by failure to deny, established that the contracts (Exhibits 1 and 2) were signed, executed, and delivered in New York, and therefore the rule of law is applicable that the New York Law controls. The law of the state of New York applies, not only to the matters pertaining to the execution, interpretation, and validity of the contract, but also it applies in determining the capacity of the parties to contract. Scudder v. Bank, 91 U. S. 406, 23 L. Ed. 245; Pritchard v. Norton, 106 U. S. 124, 1 Sup. Ct. 102, 27 L. Ed. 104; Brown v. American Finance Co. (C. C.) 31 Fed. 516; Shuenfeldt v. Junkermann (C. C.) 20 Fed. 357; Netherwood v. Raymer (D. C.) 253 Fed. 515.

[2] The testimony taken by deposition establishes (and it is no way controverted) that the plaintiff became of age on July 13, 1918. Plaintiff rescinded the contracts with the two defendants by letters, which are sufficient in indicating her desire to disaffirm the contracts. This she might do, for while the contracts were not absolutely void, they were voidable at her election. International Text-Book Co. v. Connelly, 206 N. Y. 194, 99 N. E. 722, 42 L. R. A. (N. S.) 1115. This rule applies to a female as well as a male infant. Section 2, New York Domestic Relations Law (Consol. Laws, c. 14); Matter of Farley, 213 N. Y. 18, 106 N. E. 756, L. R. A. 1916D, 816, Ann. Cas. 1916C, 494. The plaintiff could negotiate or even contract for services with another before she reached the age of 21 on July 13, 1918, and this she did, and since she has not disaffirmed it, the contract with Keeney is binding.

[3] The contract of the 19th of September, 1918, and the negotiations between the William Fox Vaudeville Company and Frank A.

Keeney and the Frank A. Keeney Pictures Corporation, and the negotiations and correspondence prior to the execution of this contract, established beyond controversy that the defendants, acting through Mr. Fox, procured the breaching of the Keeney contract with the plaintiff. This was a clear violation of the plaintiff's legal rights. She was a star, and had unique capabilities as a motion picture actress. Indeed, the parties acknowledged this in the terms of the contract. It is not necessary that actual malice in the sense of personal ill will or animosity should exist to afford to the plaintiff equitable relief. Bitterman v. L. & N. R. Co., 207 U. S. 205, 28 Sup. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693. If one maliciously interferes with a contract between two persons, and induces one of them to break the contract to the injury of the other, the injured party can maintain an action against the wrongdoer. Angle v. Chicago R. Co., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55. That the defendants acted intentionally is proven beyond dispute. The mere fact that they may have thought they had an equitable or legal right so to do is not an answer to an equitable action if they were wrong in this judgment. To do intentionally that which is calculated in the ordinary course of events to damage and which, in fact, does damage another person in his property or trade, is malicious in the law, and is actionable if it is done without just cause or excuse. Hitchman Co. v. Mitchell, etc., 245 U. S. 229, 38 Sup. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461.

In Automobile Ins. Co. v. Guaranty Securities Corp. (D. C.) 240 Fed. 222, it was said:

"The Circuit Court of Appeals of this circuit has recently expressed its opinion in the case of American Malting Co. v. Keitel, 209 Fed. 351, 126 C. C. A. 277, to the effect that it is a tort for A. to persuade B. to break his contract with C., and that the federal courts have in numerous cases issued injunctions to prevent the breach of contracts, even though they are ordinary business contracts involving no employment or other distinctly personal relation."

Judge Rogers there said:

"We failed to discover any satisfactory distinction between an attempt to induce employés to break a contract of employment and an attempt to induce customers to break their business contracts for the purchase or sale of goods."

[4] The right to proceed in equity to restrain inducing the breach of contract has been recognized (American Co. v. Keitel, 209 Fed. 351, 126 C. C. A. 277), and a court of equity will interfere if one is seeking profit by procuring the breach of any confidential relation by an employer. Asso. Press v. Internatl. News Service, 245 Fed. 244, 157 C. C. A. 436, affirmed Internatl. News Service v. Asso. Press, 248 U. S. 215, 39 Sup. Ct. 68.

[5] The plaintiff had a right to practice her profession or calling. In addition to the money compensation under the Keeney contract, she had the benefits accruing to her of advertising and experience. What may come to her by way of added reputation because of fulfilling this contract was hers. It is proper for the plaintiff to appeal to a court of equity to have determined the validity of the con-

tracts which she has disaffirmed after reaching her majority, and since the defendants have threatened and were actually asserting that their contracts for her unique services were still binding and in force, she was entitled to have them restrained from continuing such representations. Atlas Underwear Co. v. Cooper Underwear Co. (D. C.) 210 Fed. 347; Mutual Life Ins. Co. v. Pearson (C. C.) 114 Fed. 395.

She has suffered damages and the measure of her damages is the loss of salary which she sustained by reason of her inability to carry out the Keeney contract. But for the defendants' interference, she would have earned such salary as the contract provided. Angle v. Chicago, etc., Ry. Co., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55; Miles Medical Co. v. Park, 220 U. S. 373, 31 Sup. Ct. 376, 55 L. Ed. 502.

A decree may be presented accordingly.