Klauder, Appellant, *v.* Cregar et al.

(1)

2

Argued April 23, 1937. Before KEPHART, C. J., SCHAFFER, DREW, LINN, STERN and BARNES, JJ.

*Samuel Kagle,* with him *Harry A. Mackey,* for appellant.

*Thomas Raeburn White,* with him *Algernon R. Clapp,* of *White & Clapp,* for appellees.

OPINION BY MR. JUSTICE SCHAFFER, June 25, 1937:

The husband of Kathryn G. Burgess was killed by an automobile operated by S. Henry Cregar, Jr. Cregar was insured against financial liability for such an occurrence by Pennsylvania Manufacturers Association Casualty Insurance Company. The widow concluded to bring an action against him to recover damages for her husband's death and to accomplish this purpose she retained George C. Klauder, Esq., executing to him a power of attorney authorizing him to institute and maintain the action. In the power of attorney was the fol-

lowing provision: "I do hereby agree that out of whatever sum is secured either by my said attorney or by me from the above defendants [sic], either by way of settlement or verdict, the expenses of this suit, including the fees of witnesses, shall be first paid in full, and of the balance so received remaining after the payment of expenses of suit, the said George C. Klauder for and in consideration of the professional services to be rendered by him in the institution, prosecution and general conduct of the said case, shall retain or be entitled to one-half part thereof." It will be noticed that the giver of the power retained to herself the right to settle with the alleged tort-feasor.

The action was brought by the attorney, and while it was pending, and before trial, the plaintiff herself settled with the defendant for the sum of $5,000. She did not pay her attorney.

Upon learning that the settlement had been made the attorney brought this action against Cregar and the insurance company, alleging that they had maliciously interfered with performance of the contract between him and his client and induced her to break the contract to his injury and damage. On the trial of the case at the close of plaintiff's evidence, the court entered a compulsory nonsuit, which it subsequently declined to remove, with the result that we have this appeal by plaintiff.

At the outset of a review of the pleadings, the testimony and the governing legal principles entering into the case, it is opportune to remark that "a contract confers certain rights on the person with whom it is made, and not only binds the parties to it by the obligation entered into, but also imposes on all the world the duty of respecting that contractual obligation. . . . If one maliciously interferes in a contract between two parties, and induces one of them to break that contract to the injury of the other, the party injured can maintain an action against the wrongdoer": *Caskie v. Phila. Rapid Transit Co.*, 321 Pa. 157, 159, 184 A. 17. An agreement

between an attorney and a client on a contingent fee basis is a legal and valid contract and as such is entitled to the protection of the law: *Williams v. Phila.*, 208 Pa. 282, 57 A. 578.

In his statement of claim plaintiff bases his right to recover on the following allegations: "Plaintiff avers that in order to effect and exact such unfair, unjust, unreasonable and unconscionable settlement, defendants in concert with each other and with full knowledge of the valid and existing agreement between the plaintiff and the said Kathryn G. Burgess, and of plaintiff's valuable rights thereunder, intentionally, wrongfully and maliciously intending to injure plaintiff and deprive him of his fee as attorney, attempted and successfully induced, procured and enticed the said Kathryn G. Burgess by means of the unfair and improper statements, arguments and persuasions aforesaid to breach and violate her contract with plaintiff and to effect such settlement without plaintiff's knowledge or consent of which settlement plaintiff was to receive and did receive no portion whatsoever. Plaintiff avers that defendants by their malicious inducement and procurement of the breach of contract as aforesaid, have deprived plaintiff of the advantages, benefits, interests and profits under said contract and his interest in the claim of the said Kathryn G. Burgess in her own right, and on behalf of her minor children, to which plaintiff was entitled under said contract resulting in a large pecuniary loss to plaintiff."

The statement of claim lays the damages on "the value of his aforesaid contract," which it is averred is $7,500 and claims this sum as compensatory damages and in addition claims punitive damages in a like sum. As we understand the case as presented in the court below and to us, the claims for damages as set forth in the statement of claim are abandoned and what is now sought is a recovery of one-half the sum which Mrs. Burgess received in settlement, $2,500.

Just what took place when the settlement was made was thus told by Mrs. Burgess. She testified that a representative of the insurance company named Watkins called to see her and told her that Cregar had asked him to come to see whether she would settle the case. She said that Watkins did not give his true name. She informed him that she could not settle the case as she had engaged Mr. Klauder as her attorney. To this Watkins replied, "That is what is wrong with you people, you run and get a lawyer before you stop to see Mr. Cregar." She informed him that she had signed a power of attorney to Mr. Klauder and that he was to get half of what she would receive from the suit. At this interview she added she would not settle without seeing her attorney. Subsequently Watkins called again at her home and inquired whether she would accept a settlement. She told him she would not, as she had engaged Mr. Klauder as her attorney and signed a power of attorney to him. Watkins then stated to her that if she would settle out of court, the power of attorney she had signed with Mr. Klauder was not any good, "That I would not have to pay him if I would settle out of court." After this statement, she told Watkins she would have to talk the matter over with her brother. This she did. Watkins, accompanied by another representative of the insurance company named Gunnigan, called upon her a third time, asked if she would make settlement and was told that she did not know what to do. They offered her $4,500 and her brother, who was present, replied, "Make it $5,000 and she will take it." She acquiesced in this. To her inquiry as to what should be done about Mr. Klauder, they told her that she did not have to pay him if she settled out of court. She then particularly inquired of Gunnigan as to what she should do about Mr. Klauder and he said, "Never mind, we will take care of that." She was also told by Watkins that she did not have to let Klauder know about the settlement and she did not inform him that it had been made. Previously she had

told him that there had been an offer of settlement. The settlement was effected by the insurance company drawing its check to Cregar and he drawing his check to plaintiff. Mrs. Burgess said she did not pay Mr. Klauder because she was told by the representative of the insurance company that she did not have to pay him.

It is argued by appellee that although the statement of claim avers that defendants had made settlement with the client for $5,000, there is no averment or proof that defendants had prevented her from paying or induced or persuaded her not to pay one-half of that sum to plaintiff, nor is any claim for one-half that sum made in the statement. While it is true it was not shown that defendants had prevented or directly induced Mrs. Burgess not to pay her attorney, the insurance company's representatives effectively brought about this result, after being informed by her that she had agreed to pay him one-half of the recovery, by stating to her that the power of attorney was not any good and that she would not have to pay him if she settled out of court and that they would take care of him and that she did not have to inform him of the settlement. There can be no question that these statements brought about the breach of her contract with Mr. Klauder and resulted in his not being paid. While it is true there is no specific claim in the statement for the $2,500, there is a claim for the value of the contract to plaintiff and while that is fixed at an extravagant figure we think it sufficiently covers the sum which he was entitled to receive, one-half of the settlement: *Scranton Axle & Spring Co. v. Scranton Board of Trade,* 271 Pa. 6, 113 A. 838. See also *Parsons Trading Co. v. Dohan,* 312 Pa. 464, 167 A. 310; *Lurie v. New Amsterdam Casualty Co.,* 270 N. Y. 379, 1 N. E. (2d) 472.

Appellee further argues that, as Mrs. Burgess had the right to settle under the power of attorney, the representatives of the insurance company could do so, notwithstanding the fact that they might believe that it would

result in injury to the plaintiff. They had the right to settle, but not the right to disturb the contract relations between her and plaintiff, in the manner she testified they did.

*Herbits v. Constitution Indemnity Co.*, 279 Mass. 539, 181 N. E. 723, called to our notice by appellee, wherein attorneys brought a tort action against the defendant upon allegations that it maliciously induced their client to deprive them of the profits of a contract with her for one-third of the recovery by settling her case, differs completely from the one in hand, because there the evidence did not warrant the finding that the defendant actually knew that by the terms of their contract of employment the plaintiffs' fee was to be based upon the amount paid in settlement, all it knew was that there was an employment and that services had been rendered by plaintiffs. Here, there is no question that the insurance company knew about the contract with plaintiff. Furthermore, in that case it did not appear that any statements were made which would lead the client to breach her contract to pay the attorneys. "When one has knowledge of the contract rights of another his wrongful inducement of a breach thereof is a wilful destruction of the property of another and cannot be justified on the theory that it enhances and advances the business interests of the wrongdoer": *Sorenson v. Chevrolet Motor Co.*, 171 Minn. 260, 266, 214 N. W. 754. "A violation of legal right committed knowingly is a cause of action, and it is a violation of legal right to interfere with contractual relations recognized by law if there be no sufficient justification for the interference": *Quinn v. Leathem,* (1901) A. C. 495, 510. Maliciousness "does not necessarily mean actual malice or ill-will, but the intentional doing of a wrongful act without legal or social justification": *Campbell v. Gates,* 236 N. Y. 457, 460, 141 N. E. 914.

"One who, having knowledge of an existing valid contract between others, intentionally, knowingly, and

without reasonable justification or excuse, induces one of the parties to the contract to breach it to the damage of the other party, is liable in an action to recover the damages suffered. The action is predicated on the intentional interference without justification with contractual rights, with knowledge thereof. Such interference constitutes a legal wrong, and, if damages result therefrom, a valid cause of action exists therefor": *Hornstein v. Podwitz,* 254 N. Y. 443, 173 N. E. 674; *Campbell v. Gates,* supra; *Lamb v. Cheney & Son,* 227 N. Y. 418, 125 N. E. 817; *Hogue v. Sparks,* 146 Ark. 174, 225 S. W. 291. If words or acts of the defendant deprive the plaintiff of some advantage or benefit to which he is entitled by reason of his contract, the action is maintainable: *Herbits v. Constitution Indemnity Co.,* supra. *Phila. Dairy Products v. Quaker City Ice Cream Co.,* 306 Pa. 164, 159 A. 3, and *Benford v. Sanner,* 40 Pa. 9, also cited by appellee, are so different in their facts from those in the case before us as not to be of influence in reaching a determination.

*Lurie v. New Amsterdam Casualty Co.,* supra, where recovery was allowed, is very similar to the case at bar. There the suit was by an attorney-at-law against an insurance company for having wrongfully caused his client to repudiate his retainer. In the course of the opinion, it was said (p. 381) : "This attorney complains, not because his client cancelled his retainer, a right inherent in the contract and not constituting a breach, but because the client, falsely denying the existence of the contract, repudiated it and assumed that position by reason of the wrongful instigation of these defendants." So we think it may be said on this record, that the client took the position that she would not pay plaintiff by reason of the wrongful instigation of the agents of the insurance company. This was done in order to effectuate the settlement which could not have been made at the figure it was, unless the lawyer's fee was left out of account and therefore for the purpose of saving money for

the insurance company. *Hogue v. Sparks,* supra, in principle bears relation to the controversy with which we are dealing and points toward the sustaining of plaintiff's right of action.

Other cases sustaining the right of action for interference with contract rights are: *Lumley v. Gye,* 2 El. & Bl. 216, 118 Eng. Repr. 749; *So. Wales Miners' Federation v. Glamorgan Coal Co.,* (1905) A. C. 239; *Carmen v. Fox Film Corp.,* 258 Fed. 703; *Angle v. Chicago, etc., R. R. Co.,* 151 U. S. 1, 38 L. Ed. 55; *Jones v. Stanly,* 76 N. C. 355; *Knickerbocker Ice Co. v. Gardiner Dairy Co.,* 107 Md. 556, 69 A. 405; *Automobile Ins. Co. v. Guaranty Securities Corp.,* 240 Fed. 222; *Gonzales v. Kentucky Derby Co.,* 197 App. Div. 277, 189 N. Y. S. 783, aff'd; *Gonzales v. Reichenthaler,* 233 N. Y. 607, 135 N. E. 938.

*Cameron v. Barancik,* 173 Illinois Appellate 23, cited by appellee (not a decision of the Supreme Court of Illinois), differentiates itself from the instant case, because, as the opinion states, there was no evidence that the person who brought about the settlement, induced, persuaded or attempted to induce or persuade the client not to hold the money for Cameron, the lawyer, or not to pay over to him that part of it to which he was entitled under the contract. Here, the agents of the insurance company directly told the client that she was not required to pay to the plaintiff money to which he was entitled under the contract.

There is no question raised as to the authority of the agents of the insurance company to bind it by the statements which they made to Mrs. Burgess and thus subject it to liability. Even if that question were in the case, there would be precedent for holding that what they stated bound their principal, the insurance company: Restatement, Agency, Sec. 248. See also *Griswold v. Gebbie,* 126 Pa. 353, 17 A. 673; *Wachter v. Phœnix Assurance Co.,* 132 Pa. 428, 19 A. 289; *Wilson v. Sale,* 41 Pa. Superior Ct. 566. Moreover, the insurance

company, having accepted the benefits of the settlement which they negotiated and not having repudiated what they did, has ratified its agents' acts: *Meyerhoff v. Daniels*, 173 Pa. 555, 34 A. 298; *Hardinge v. Kuntz*, 278 Pa. 232, 122 A. 509; *Ohlbaum v. Mayer*, 285 Pa. 260, 131 A. 858; *Newland v. Lehigh Valley R. Co.*, 315 Pa. 193, 173 A. 822.

Our study of the record shows nothing which would make Cregar liable to plaintiff. As to him the nonsuit was proper. We are of opinion that as to the other defendant, Pennsylvania Manufacturers Association Casualty Insurance Company, plaintiff stated and proved a cause of action. It was, therefore, error to enter a nonsuit as to it.

Judgment for defendant, S. Henry Cregar, Jr., is affirmed. Judgment for Pennsylvania Manufacturers Association Casualty Insurance Company is reversed and a new trial awarded.