Birl, Appellant, v. Philadelphia Electric Co.

Argued January 4, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Ronald N. Rutenberg,* with him *Harry A. Ruten-berg,* for appellant.

*Michael A. Foley,* for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March 22, 1960:

This appeal is from a final order of the Court of Common Pleas No. 1 of Philadelphia County in a trespass action, said order having sustained appellees' prepliminary objections and dismissed appellant's complaint.[1]

Joseph J. Birl, appellant, instituted a trespass action against the Philadelphia Electric Company (herein called Company) and Hunter Lott (herein called Lott) in which Birl charged that the Company, acting through Lott, its sales manager, had "falsely and maliciously" induced the Eureka Williams Corporation (herein called Eureka) to dismiss Birl from his employment as Eureka's assistant branch manager and branch manager-to-be in Philadelphia.

Birl's complaint contained two counts: the first count alleged that, on or about January 30, 1958, Lott, acting as the Company's sales manager, advised Eureka that the Company would not allow Birl "to contact, deal or do business" with it because Birl had left the Company's employment nine years earlier without giving written notice to the Company; the second count alleged that Lott, acting within the scope of his employment by the Company, had slandered Birl by telling his superior and other persons that Birl had left his former employment with the Company in 1951 without giving notice.

---

[1] The order appealed from is the dismissal of the complaint, not the order sustaining the preliminary objections: *Sullivan v. Philadelphia,* 378 Pa. 648, 649, 650, 107 A. 2d 854.

The court below sustained appellees' preliminary objections on the ground that Birl's complaint in both counts failed to set forth a cause of action. The instant appeal raises one question: have either or both counts of Birl's complaint stated a cause of action?

At least since *Lumley v. Gye* (1853), 2 Ell. & Bl. 216, 1 Eng. Rul. Cas. 706, the common law has recognized an action in tort for an intentional, unprivileged interference with contractual relations. It is generally recognized that one has the right to pursue his business relations or employment free from interference on the part of other persons except where such interference is justified or constitutes an exercise of an absolute right: Restatement, Torts, §766. The Special Note to comment m. in §766 points out: "There are frequent expressions in judicial opinions that 'malice' is requisite for liability in the cases treated in this Section. But the context and course of decision make it clear that what is meant is not malice in the sense of ill will but merely purposeful interference without justification." Our cases are in accord: *Klauder v. Cregar*, 327 Pa. 1, 7, 192 A. 667;[2] *Dora v. Dora*, 392 Pa. 433, 437, 141 A. 2d 587.[3]

The elements of this tort of inducing breach of contract or refusal to deal, which must be averred in the complaint, are set forth in the Restatement, Torts, §766, which says, ". . . one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another

[2] In *Klauder*, supra (p. 7), our Court said: "Maliciousness 'does not necessarily mean actual malice or ill-will, but the intentional doing of a wrongful act without legal or social justification': Campbell v. Gates, 236 N. Y. 457, 460, 141 N.E. 914".

[3] In *Dora*, supra, Chief Justice JONES said, "Nor need malice or fraud be proven in order to support the action for damages in trespass".

is liable to the other for the harm caused thereby". In other words, the actor must act (1) for the purpose of causing this specific type of harm to the plaintiff, (2) such act must be unprivileged, and (3) the harm must actually result. Furthermore, where the defendant is alleged to have induced another to discharge his employee by false statements, the substance of such statements should be set out in the complaint: *Moran v. Dunphy,* 177 Mass. 485, 59 N.E. 125.

The sufficiency of the first count of Birl's complaint must be determined in the light of these principles. In paragraph 5, Birl avers that, on or about January 30, 1958, the Company, acting through Lott, its agent then acting within the scope of his employment, "falsely and maliciously" stated to certain named Eureka officials that the Company would not allow Birl "to contact, deal or do business" with the Company or any of its properties because "when [Birl] had previously been employed by the Company, in 1949-1951, said [Birl] had quit without giving written notice to the Company"; in paragraph 6, it is averred that, the Company being Eureka's most important customer in the Philadelphia area, Birl was instructed by his superiors, to whom the Company and Lott had communicated this statement, that unless he "could convince [the Company] and [Lott] to rescind this arbitrary refusal to deal, based on the false and malicious allegations", his [Birl's] employment with Eureka would be terminated; in paragraph 7, Birl averred that he had contacted the Company through Lott and two other agents but they refused to rescind Lott's order; in paragraph 8, it was averred that, when Lott was informed by Birl that Birl would lose his employment if the order was not rescinded, Lott told Birl "that he did not care what happened to [Birl] and that [Birl] should have thought of this in 1951 when he resigned without notice"; paragraph 9 averred that solely "because of such false and

malicious representations" Eureka discharged Birl from his employment; paragraph 10 averred that the "representations and statements and refusal to deal with [Birl] were made by [the Company] acting through its duly authorized agent [Lott] maliciously, and knowing the same to be untrue, and with the intent of bringing about [Birl's] discharge from his said employment and well knowing that the refusal of [the Company] to allow [Birl] to contract, deal, or do business with it and its properties would result in [Birl's] loss of employment".

In *Sullivan v. Philadelphia*, supra, 650, Mr. Justice (now Chief Justice) JONES stated: "What we said in Davis v. Investment Land Co., 296 Pa. 449-452-453, 146 A. 119, and quoted with approval in Sun Ray Drug Co. v. Lawler, 366 Pa. 571, 573, 79 A. 2d 262, is peculiarly germane,—'In determining whether or not [a summary] judgment should be or should have been entered [on a demurrer], two rules must always be applied: (1) The question to be decided is not whether the statement of claim is so clear in both form and specification as to entitle plaintiff to proceed to trial without amending it, but whether, upon the facts averred, it shows with certainty that the law will not permit a recovery by plaintiff; and (2) Where a doubt exists as to whether summary judgment should be entered, this should be resolved in favor of refusing to enter it' ".

Our examination of the first count of this complaint indicates that Birl did state a valid cause of action against both appellees. Birl alleges that the refusal of the Company, acting through Lott, to deal with Eureka's employee, Birl, was malicious in inspiration and based upon a statement which was false, that the Company, through Lott and two other agents, was informed that persistence by the Company in this attitude would result in a loss of Birl's employment, that

the loss of Birl's employment was due to the Company's false and malicious statement, that the Company and Lott knew that the statement was false and that the Company knew that its refusal to deal with Birl would result in the loss by Birl of his employment. Such allegations, *if proven,* would permit a recovery by Birl. Restatement, Torts, comment g, illustration 3, relied upon by the court below, is inapposite. The first count of the complaint sufficiently avers an intentional or purposeful, and unprivileged, interference with Birl's contractual or business relationship, aimed at a severence of Birl from Eureka's employment, to constitute an actionable wrong.

The second count of the complaint, alleging slander, was found by the court below to be insufficient on the ground that Lott's statement that Birl's resignation of his position with the Company without giving notice was not defamatory or actionable.

It is the function of the court, in the first instance, to determine whether the communication is capable of a defamatory meaning: Restatement, Torts, §614(1); *Bausewine v. Norristown Herald* (1945), 351 Pa. 634, 643, 41 A. 2d 736; *Boyer v. Pitt Publishing Co.* (1936), 324 Pa. 154, 157, 188 A. 203. In so doing, the appropriate test is that set forth in Restatement, Torts, §559: "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him". Applying that test to the instant situation and, assuming, arguendo, that Lott, acting within the scope of the Company's employment, did make the alleged statement, Birl avers that Lott said to four named and identified persons and "many other persons" on or about January 30th and 31st, 1958 that: "Philadelphia Electric will have no further dealings with Joseph J. Birl and he will no longer be allowed to contact or do business in any way

with any of the Philadelphia Electric Company properties because when he was employed by Philadelphia Electric Company in 1951, Joseph J. Birl quit without giving notice". From that statement the recipients of such communication could reasonably conclude that Birl lacked honor and integrity and was not a person to be relied upon insofar as his business dealings were concerned. That such an attack on Birl's integrity and honor might deter third persons from "associating or dealing" with him is too obvious for words and the recipients of such a communication could reasonably have been deterred from any future association or dealing with Birl. The second count sufficiently sets forth a cause of action in slander against both appellees.

Order reversed. Costs on appellees.