Capecci, Appellant, *v.* Liberty Corporation.

198

Argued November 22, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*Norman Shigon,* with him *Gilbert I. Yaros,* for appellant.

*Francis E. Shields,* with him *David W. Scully,* and *Pepper, Hamilton & Scheetz,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, January 2, 1962:

This appeal is from the entry of a judgment n.o.v. by the Court of Common Pleas No. 4 of Philadelphia County in an action in trespass for inducing a breach of an employment contract.

Liberty Corporation (Liberty) is engaged in the manufacture, sale and distribution of mixed concrete in Philadelphia. Joseph Capecci, Inc. (Capecci) is a hauling concern, operating approximately 60 trucks, whose *sole* business is to haul mixed concrete from Liberty's manufacturing plant on Delaware Avenue in Philadelphia to contractors at various job sites in that city. The modus operandi of the business of both Liberty and Capecci is as follows: contractors telephone Liberty outlining their daily requirements and delivery schedule, Liberty then prepares a delivery schedule to accommodate the contractors and then contacts Capecci for the trucks necessary to meet the requirements. Capecci hauls *exclusively* for Liberty and Liberty delivers its concrete *exclusively* through Capecci. Capecci owns the trucks and chassis, while the concrete mixers, which are mounted on the trucks and known as "barrels", are owned by Liberty. Liberty pays Capecci according to the number of cubic yards delivered.

Although Liberty and Capecci are separate and distinct corporations, in the manner in which their respective businesses are conducted both are highly integrated. Despite the fact that Liberty has no employees engaged in hauling, Liberty joins with Capecci in labor negotiations with Teamsters Local 470, executed with Capecci the basic collective bargaining agreement in 1947, acknowledged a wage increase rider to that agreement in 1955 and is kept in touch with any changes contemplated in the labor agreement.

Anthony Capecci (appellant), whose brother is Capecci's president, had been employed as a truck driver by Capecci for upwards of 20 years and was its oldest employee from the standpoint of seniority. As a member of Local 470, appellant was a third party beneficiary to the labor contract executed by that Union, Capecci and Liberty. Capecci, which did all the hiring and firing of its employees through its secretary,

on August 21, 1955, notified appellant that he was discharged from Capecci's employ. Several days later, the Union held a meeting to consider the grievance arising from appellant's dismissal and the Union, under the provisions of the labor contract, referred to arbitration the propriety of the dismissal. After a hearing held before the arbitrator, Geoffrey Cunniff, Esq., he found that appellant's dismissal was justified and that he was not entitled to reinstatement.

Thereafter, appellant instituted an assumpsit action in Court of Common Pleas No. 5 of Philadelphia County against Capecci. Appellant's theory in that action was that his dismissal by Capecci was in violation of the labor contract and that, for such unlawful dismissal, he was entitled to damages. Capecci filed an answer averring that appellant had been discharged because of disloyalty, insubordination, inefficiency and incompetency and, under new matter, averred the fact that, as a result of the labor-contract-provided arbitration, his dismissal was found to be justified. In reply thereto, appellant alleged that the procedure providing for arbitration in the labor contract had not been properly pursued and that appellant had not, in the arbitration proceedings, been given a proper opportunity to present his position. The court entered a judgment on the pleadings in favor of Capecci and against appellant (*Capecci v. Capecci, Inc.,* 11 Pa. D. & C. 2d 459), and this Court affirmed that judgment per curiam (*Capecci v. Joseph Capecci, Inc.,* 392 Pa. 32, 139 A. 2d 563).

In the meantime, appellant had instituted this trespass action against Liberty in the Court of Common Pleas No. 6[1] of Philadelphia County. In his complaint, appellant averred, inter alia: (1) that Liberty "did

---

[1] Suit was docketed in Court of Common Pleas No. 6 but tried in Court of Common Pleas No. 4.

cause [appellant] to be unlawfully discharged from his employment with [Capecci]"; (2) that Liberty "did maliciously interfere with a contract between [Capecci] and [the Union]"; (3) that, as a result of Liberty's activities "in causing [Capecci] to dismiss [appellant] and terminate [appellant's] contract of employment" and "having caused such dismissal by the use of threats and warnings that [Liberty] would terminate its contract with [Capecci] and engage the services of another hauler unless [Capecci's] dismissal was effected", the appellant lost his job. In its answer which denied these allegations, supra, Liberty raised several affirmative defenses: (1) that the arbitrator's finding that the discharge was justified barred this action; (2) that the entry of judgment in the assumpsit action of appellant against Capecci rendered res adjudicata the matter pleaded in the present action; (3) the defense of privilege. After a trial before Judge RAYMOND P. ALEXANDER and a jury, the jury returned a verdict in favor of appellant and against Liberty in the amount of $17,000. The court en banc granted Liberty's motion for judgment n.o.v. and, from the entry of that judgment, this appeal was taken.

Appellant raises five questions: (1) had appellant sustained his burden of proof?; (2) did appellant have a right of action against Liberty for interference with his employment relationship with Capecci?; (3) whether the burden of proof as to privilege was upon Liberty and whether the question of privilege was one of fact for the jury?; (4) did the grievance procedure under the labor contract bar appellant's rights in this action?; (5) whether the arbitration barred or estopped appellant in this action?

It requires no citation of authority to support the well-established rule that, upon an appeal from the entry of a judgment n.o.v., we view the testimony in the light most favorable to the verdict winner and that to

such verdict winner must be given the benefit of every reasonable inference arising from such testimony.

The basis of this action is set forth in the Restatement, Torts, Section 766: ". . . one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby". In *Birl v. Philadelphia Electric Co.*, 402 Pa. 297, 300, 301, 167 A. 2d 472, we said: "At least since Lumley v. Gye (1853), 2 Ell. & Bl. 216, 1 Eng. Rul. Cas. 706, the common law has recognized an action in tort for an intentional, unprivileged interference with contractual relations. It is generally recognized that one has the right to pursue his business relations or employment free from interference on the part of other persons except where such interference is justified or constitutes an exercise of an absolute right: Restatement, Torts, §766. The Special Note to comment m. in §766 points out: 'There are frequent expressions in judicial opinions that "malice" is requisite for liability in the cases treated in this Section. But the context and course of decision make it clear that what is meant is not malice in the sense of ill will but merely purposeful interference without justification.' Our cases are in accord: Klauder v. Cregar, 327 Pa. 1, 7, 192 A. 667; Dora v. Dora, 392 Pa. 433, 437, 141 A. 2d 587." In *Birl,* we further stated (p. 301): ". . . the actor must act (1) for the purpose of causing this specific type of harm to the plaintiff, (2) such act must be unprivileged, and (3) the harm must actually result". See also: *Locker, etc. v. Hudson Coal Company,* 87 Pa. D. & C. 264, 267 (by Judge (now Justice) EAGEN).

It was appellant's duty to sustain the burden of proof of these elements of the tort in this action and our inquiry must initially be directed to a scrutiny of the record to ascertain whether the appellant sustained such burden of proof.

An examination of the complaint indicates very clearly the basis upon which appellant sought to recover. In the complaint, appellant avers that Liberty by its actions, i.e., by threats and warnings to Capecci that it would terminate its contract with Capecci and secure another hauler unless appellant was dismissed, *caused* the discharge of appellant. That is the *sole* theory averred in the complaint and it was encumbent upon appellant to furnish proof that Liberty by its actions *caused* appellant's dismissal from employment. Appellant in his brief now alleges an additional theory, a theory not alleged in his complaint. That theory is that, if *after appellant had been discharged,* Liberty had not interfered, the appellant could have been rehired and that such interference on the part of Liberty was an interference with an expectancy of appellant. This unalleged basis of recovery cannot now be considered. The question is whether Liberty by its actions *provoked, induced* or *caused* the dismissal of appellant by Capecci. In this light we view the record.

With one exception, the only testimony which appellant produced as to interference on the part of Liberty related to actions of Liberty *after,* not *before,* appellant had been discharged. The testimony as to such actions on the part of Liberty consisted of three statements allegedly made on behalf of Liberty. Appellant testified that, at the Union meeting which took place some days *after* the discharge; "[Schultz, the Union president] told the body of men that if he didn't fire me or let me go, that this here man from St. Louis was coming in with the trucks, told the whole body of men. And after it was all over, he said, 'We are going to give you arbitration'. I said 'What for?'" Appellant further testified that at the arbitration hearing—held 24 days *after* the discharge: "Mr. Schultz got up and told [the arbitrator], he said the same thing; he said, 'If I don't get rid of him all of the sixty men would lose

their jobs' ". Appellant then stated that at the same arbitration hearing: "Well, Mr. Fitzgerald [Liberty's vice-president] got up and told [the arbitrator] if this arbitration didn't go the right way, the way it is supposed to be—Q. What do you mean? A. I mean if I wasn't getting fired, my brother Joseph Capecci would get thrown out of the place. Q. What does that mean? A. Out of Liberty yard. Q. What did he say precisely? A. He said that there was another outfit coming from St. Louis, he told . . ., the arbitrator. Q. What would this outfit do from St. Louis? A. Take the barrels over and all sixty men would lose their jobs."[2] None of this testimony refers to any action on the part of Liberty *antedating* the discharge.

In the arbitrator's award it was stated: "While it may have no bearing on the final disposition of the instant matter, it is worth noting that approximately one week before [appellant's] discharge, Liberty notified [Capecci] that it was terminating its contract and intended to engage the services of another hauler. Liberty stated without contradiction, that [appellant's] conduct was in large measure responsible for its determination to cancel the contract". From what source did such statement in the award arise? The arbitrator testified that this information came from the hearing but he could not recall who said it, the testimony at the hearing was not taken stenographically and, inferentially, at least, since hearsay testimony is customarily taken at an arbitration hearing, it could have been hearsay. However, when this part of the award was read to appellant by his counsel at trial, appellant denied that such testimony was presented at the arbitration hearing: *"Nobody said anything at the arbitration about it"*.

---

[2] The arbitrator could not recall this statement, Schultz did not hear it and Fitzgerald denied making it.

Furthermore, appellant called Fitzgerald, Liberty's vice-president, as on cross-examination and he denied that he ever told Capecci to fire appellant or that he ever instructed any one on behalf of Liberty to convey such a message to Capecci. That testimony stands uncontradicted on this record and binds appellant: *Auel v. White*, 389 Pa. 208, 215, 132 A. 2d 350.

The burden upon appellant cannot be sustained by proof of Liberty's actions which took place *after* the discharge. Coupled with the absolute denial by appellant that any such testimony was given, the statement in the arbitrator's award is wholly insufficient to warrant a finding that Liberty *caused* the discharge of appellant. On such an insecure base no verdict of a jury can or should stand. That Liberty by its actions brought about the dismissal of appellant cannot be found by guess or conjecture but only upon substantial, preponderating evidence and evidence of such quantity and quality is completely lacking on this record.

In view of the conclusion reached, we need not consider appellant's other reasons to upset this judgment n.o.v. The long and short of it is that appellant failed to make out the case which he alleged.

It might not be amiss to state that a careful scrutiny of this record clearly indicates that appellant's severance from his employment resulted from his own actions and inactions rather than from any action on the part of Liberty. As the arbitrator well stated: "The evidence preponderantly shows that [appellant] was less than diligent in the performance of his duties. He appears to have been the ringleader of a clique of employees who, if left to their own devices, would have caused [Capecci] serious financial embarrassment if not economic ruin. [Appellant] not only consumed more time in making trips than was necessary, but was largely instrumental in causing others to follow the same pattern. He was an agitator amongst the other

truck drivers and constantly denounced [Capecci] and [Liberty]".

Judgment affirmed.