## Kalodis v. Mayo Motors, Inc.

*Dean L. Foote*, for plaintiff.

*Walker & Walker*, for defendant.

HENNINGER, P. J., September 24, 1963.—Plaintiff is suing defendant for return of the net value, $640.72, of his 1956 Cadillac automobile traded in to defendant on September 6, 1961, in exchange for a 1958 Cadillac, which plaintiff claims was defective, which defects plaintiff was prevented from discovering because of Mayo's insistence that trial and inspection were unnecessary, since the car was "in good running condition." Plaintiff further pleads that the car was in fact defective and that, in spite of alleged repairs by defendant, it remained defective, whereupon plaintiff notified defendant to retake the 1958 automobile. Defendant repossessed the 1958 Cadillac on October 13, 1961, but informed plaintiff on September 8, 1961, that his 1956 Cadillac had been sold.

Defendant filed a preliminary objection by way of demurrer that judgment should be entered in its favor because the used car sales contract precludes oral evidence of any implied warranty of fitness.

Attached to the amended complaint and to a supplemental amended complaint are an installment sale contract and a used car sales contract. *Printed* in the used car sales contract are the words "Please enter my order for the following described used car, as is:" The installment sale contract contains this language: "Buyer acknowledges that it has received delivery of the Car, having first examined and tested it and found it to be in first class condition and as represented by Seller. All warranties, express or implied and representations of Seller regarding the Car and this transaction are set forth herein."

Viewing the used car sales contract alone, it would seem that defendant makes no representations at all concerning its used cars and, in fact, warns all custom-

ers that they are buying at their own risk. When we come to the installment sale contract, however, we find that the car is "in first class condition." What magic happened to the car between the signing of the two contracts, both on the same day, to bring an "as is" car to "first class condition" we are not told. The buyer was probably unaware of either provision, although he is bound by his signature.

What concerns us particularly is whether the installment sale contract, which certainly follows the used car sales contract in time, does not supersede the earlier contract. Unless the "as is" clause is given its full force (Uniform Commercial Code of April 6, 1953, P. L. 3, sec. 2-316(a), as amended 12A PS §2-316), there may remain a question of the introduction of parol evidence.

The language above quoted from the installment sale contract may indeed be used to contradict any testimony by plaintiff that he was induced fraudulently not to test the car, but it does not necessarily negative a warranty of fitness: Uniform Commercial Code, sec. 2-314, 12A PS §2-314(1).

While we have the power to foreclose a party when it is clear that the parol evidence rule must inevitably prevent him from proving his case (Gianni v. R. Russell & Co., Inc., 281 Pa. 320; Speier v. Michelson, 303 Pa. 66; Hambleton v. Hartman, 160 Pa. Superior Ct. 447), we believe that that power is to be exercised only in the clearest of cases: Davis v. Investment Land Co., 296 Pa. 449, 453; Birl v. Philadelphia Electric Co., 402 Pa. 297, 302. In this case, plaintiff surely has an uphill fight in light of his assertions in the installment sale contract, but we are not prepared to say that this is the clearest of cases for summary judgment.

Now, September 24, 1963, defendant's preliminary objections are dismissed and defendant ordered to answer over on the merits within 20 days.