## Snider v. McKean

Before Van Der Voort and Fiok, JJ.

*David B. Buerger* and *Robert L. Frantz,* for plaintiff.

*James H. Brennan* and *Maurice Chaitkin,* for defendant.

FIOK, J., December 29, 1964.—This case comes before the court on defendants' preliminary objections to the complaint. Douglas E. Snider, as an individual, commenced a complaint in trespass in which he alleged the following:

For several years prior to January 1955, plaintiff had been employed by defendant, McKean Oldsmobile Company. In early January 1955, Edgar D. McKean, Sr., loaned plaintiff $40,000 so that he could become a franchised dealer of General Motors Corporation for its Chevrolet Division. Thereafter, plaintiff and Motors Holding Division of General Motors Corporation formed a corporation known as Snider Chevrolet, Inc., for the purpose of securing a dealer's franchise from General Motors Corporation.

Motors Holding Division received 550 shares of class A voting stock and plaintiff was issued 400 shares of class B nonvoting stock in accordance with an option agreement entered into at the time of incorporation. The new corporation having entered into a dealer selling agreement with General Motors Corporation, it commenced business on or about February 8, 1955, and continued to do business until June of 1963. Plaintiff became president of Snider Chevrolet, Inc., and continued in that capacity throughout the entire period, receiving both a salary and a bonus as such officer.

From 1955 through February 1963, certain differences occurred between plaintiff and defendants because of competition between defendants and Snider Chevrolet, Inc., particularly in the field of leasing motor vehicles to organizations. Each of the individual defendants was a shareholder, officer or director of McKean Oldsmobile Company, which owned substantially all of the stock of Lease Motor Vehicle Company, which was in competition with Snider Chevrolet, Inc., trading as Snider Leasing Company. In February 1963, United Steelworkers of America, the International

Union, awarded a lease contract to Snider Chevrolet, Inc. Lease Motor Vehicle Company had also bid on said contract and prior thereto had lease contracts with said union. Shortly thereafter, Edgar D. McKean, Jr., demanded that plaintiff compel Snider Chevrolet, Inc., to withdraw from the successful bid and, upon plaintiff's refusal to do so, defendants, it is alleged, wrongfully and maliciously began a campaign to destroy the advantageous relationship between plaintiff, on the one hand, and General Motors Corporation and Snider Chevrolet, Inc., on the other hand.

An officer of defendant, Lease Motor Vehicle Company, at the direction of the individual defendants, informed a local manager of the Chevrolet Motor Division of General Motors Corporation that plaintiff had utilized a loan from defendant, Edgar D. McKean, Sr., in order to obtain a Chevrolet franchise for Snider Chevrolet, Inc. It is alleged that the specific reason of such disclosure was to have the franchise of Snider Chevrolet, Inc., terminated, to remove plaintiff as president and operator of said corporation and to have the corporation liquidated. On or about June 14, 1963, Chevrolet Motor Division notified plaintiff that the Chevrolet franchise for Snider Chevrolet, Inc., was terminated as of that date. On or about July 1, 1963, Motors Holding Division informed plaintiff that he was discharged as president of Snider Chevrolet, Inc., and removed as a director.

It is alleged that this action by defendants caused plaintiff considerable pecuniary loss. For several years prior to his discharge, plaintiff received an annual salary of $16,800 from the corporation, in addition to a substantial bonus. Also, under an option with Motors Holding Division, he had the option to purchase additional shares of class B nonvoting stock of said Snider Chevrolet, Inc., and that at the time of termination of franchise, he had 463 shares of such stock. The net

worth of Snider Chevrolet, Inc., was $222,858.46, which did not include the lease with United Steelworkers. Had this lease been included, the net worth of the corporation, before taxes, would have been increased by at least $150,000. On or about August 16, 1963, Motors Holding Division of General Motors Corporation elected to exercise its rights under the option agreement to liquidate and dissolve Snider Chevrolet, Inc., which required the assignment of the lease agreement with United Steelworkers for only the sum of $5,000.

Basically, plaintiff has alleged a tort of defendants in inducing a breach of contract or of a refusal to deal with Snider Chevrolet, Inc., or not to continue a business relation with it by disclosing to General Motors Corporation that plaintiff had received a loan from one of the defendants to start the business. As a result of this disclosure, claimed not to be privileged but wrongful and malicious, plaintiff lost certain pecuniary benefits which would have continued were it not for the tortious conduct of defendants.

Defendants contend that (a) no actionable wrong has been alleged against defendants for having made truthful disclosure of facts to General Motors Corporation; (b) that the complaint does not state any facts against any of the individual or corporate defendants which would support an action in trespass, and (c) that plaintiff is not a proper party to bring this action but that the action, if any, should be brought by Snider Chevrolet, Inc., the real party in interest. We will consider these objections separately.

(a) *Truthfulness of the Disclosure*

If the cause of action here presented were based on defamation or slander, defendants' claim of truthfulness of the disclosure made might be considered as a valid objection. However, the cause of this action is predicated on the wrongful interference by defendants

of plaintiff's business relations which is recognized as a separate and distinct cause of action. The basis of this action is set forth in the Restatement, Torts, §766, which provides ". . . one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relationship with another is liable to the other for the harm caused thereby." Numerous cases in this Commonwealth are in accord with this definition: Glazer v. Chandler, 414 Pa. 304, 200 A. 2d 416 (1964); Cappecci v. Liberty Corporation, 406 Pa. 197, 176 A. 2d 664 (1962). See Restatement, Torts, Pa. Annot., §766 (1953 Supp.)

All the cases in this Commonwealth considering the allowance of recovery for this tort involved a defendant's interference with known contracts or business relations existing between third parties and a plaintiff: Dora v. Dora, 392 Pa. 433, 141 A. 2d 587 (1958); Neel v. Allegheny County Memorial Park, 391 Pa. 354, 137 A. 2d 785 (1958); Padden v. Local No. 90 United Association of Journeymen Plumbers, 168 Pa. Superior Ct. 611, 83 A. 2d 327 (1951); Locker v. Hudson Coal Company, 87 D. & C. 264 (1953). From the allegations contained in the complaint, which we must assume to be true for the purposes of this disposition, defendants were familiar with the business relationships with which they attempted to, and did successfully, interfere. Each of the individual defendants was an officer, director or stockholder of the defendant automobile company, which also dealt with General Motors Corporation. Furthermore, Lease Motor Vehicle Corporation, through the individual defendants as officers and directors, was also familiar with the nature of the business relationship between plaintiff and Snider Chevrolet, Inc., on the one hand and Snider Chevrolet, Inc., and General Motors Corporation on the other hand.

The actor or tortfeasor must act (1) for the purpose

of causing the specific harm to plaintiff as set forth in section 766 of the Restatement, Torts; (2) such act must be unprivileged, and (3) harm must actually result: Birl v. Philadelphia Electric Company, 402 Pa. 297, 167 A. 2d 472 (1960). Malice, in the sense of ill will, is not required, but purposeful interference without justification must be shown: Capecci v. Liberty Corporation, supra. An examination of this complaint meets all the requirements of the decided cases and only the proofs to be established will show whether recovery may be allowed. Likewise, privilege must be shown by proof and within the limitations of the Restatement. Section 768 of the Restatement of Torts provides:

"(1) One is privileged purposely to cause a third person not to enter into or continue a business relation with a competitor of the actor if

"(a) the relation concerns a matter involved in the competition between the actor and the competitor, and

"(b) the actor does not employ improper means, and

"(c) the actor does not intend thereby to create or continue an illegal restraint of competition, and

"(d) the actor's purpose is at least in part to advance his interest in his competition with the other."

Whether or not the disclosure referred to in the complaint was privileged will have to await the outcome of the trial. However, it must be noted that the truth of the statement complained of may be relevant only as a factor in the determination of privilege or justification and not a bar to recovery as a matter of law. It is clear that where a contract exists which a competitor attempts to terminate through a third party, the fact that the actor is a competitor will not alone excuse such action. Defendants, as competitors, dealt directly with General Motors Corporation and not with the union. They made no attempt to induce

the union to cancel its contract with Snider Chevrolet, Inc., but succeeded in the elimination of competition altogether. This contract with General Motors had no relationship to competition in the rental of automobiles, and the disclosure of the loan to plaintiff as it relates to Snider Chevrolet, Inc., even if true, in and of itself is not sufficient to bar the claim for a wrongful tort.

(b) *Failure to State a Cause of Action*

The next objection asserted relates to the failure to specify in the complaint that either of the individual defendants or the corporate defendants committed any act to cause damage to Snider Chevrolet, Inc., or to show any relationship between United Steelworkers of America and Snider Chevrolet, Inc. The complaint sets forth that Edgar D. McKean, Sr., loaned the money to plaintiff for the specific purpose of investing it in Snider Chevrolet, Inc. While the specific reasons for making this sum available to plaintiff are not spelled out, the evidence at the time of trial will have to show what the understanding, if any, was between plaintiff and Edgar D. McKean, Sr., in order to hold him in the case. However, it is also alleged that all of the individual defendants were shareholders, officers and directors of McKean Oldsmobile Company and Lease Motor Vehicle Company and held more than one of said positions. It is also alleged that the individual defendants, after differences arose over the leasing of vehicles by the two companies, Lease Motor Vehicle Company and Snider Chevrolet, Inc., also trading as Snider Leasing Company, began a campaign to interfere with the advantageous relationship existing between plaintiff, Snider Chevrolet, Inc., and General Motors Company. They informed several individuals that the funds utilized by plaintiff to obtain the Chevrolet franchise for Snider Chevrolet, Inc., were obtained from a loan. It is further alleged that this information was disseminated maliciously, knowing well that such information

would cause General Motors Corporation to terminate the franchise and ultimately result in the discharge of plaintiff as president and operator of Snider Chevrolet, Inc. The complaint further alleges that Edgar D. McKean, Jr., called plaintiff and told him, in effect, to withdraw from the bidding on the union lease contract. In addition, Mr. Kelly, as representative of Lease Motor Vehicle Company, informed an agent of the Chevrolet Division of the fact that the Snider corporation was formed with a loan from Edgar D. McKean, Sr.

To what extent each of the individual defendants participated, either individually or as officers and directors of the two corporate defendants must be developed at the time of trial. If it can be shown as a part of an overall design all these efforts were directed toward the eventual termination of the franchise Snider Chevrolet, Inc., had with General Motors Corporation, defendants may be answerable to plaintiff.

This action has been brought by plaintiff as an individual. Any failure to allege damage to Snider Chevrolet, Inc., would be immaterial to the issue as to whether the actions complained of caused damage to plaintiff personally. This is the issue and plaintiff will succeed or fail depending on the showing of damages to himself rather than to the corporation. Likewise, since no claim is asserted on behalf of Snider Chevrolet, Inc., the objection based on the failure to show the relationship between Snider Chevrolet, Inc., and United Steelworkers of America is also without merit.

(c) *Lack of Proper Party*

Defendants have moved to dismiss the action for the reason that plaintiff, Douglas E. Snider, is not a proper party to bring this action. They contend that if the suit is predicated on the loss of the General Motors, Chevrolet Division franchise, such damage is suffered entirely by Snider Chevrolet, Inc., and not by the individual plaintiff. They conclude, therefore, that the real

party in interest is Snider Chevrolet, Inc., and not the plaintiff, or that Snider Chevrolet, Inc., is a necessary or indispensable party to this action.

This action was brought by the individual plaintiff against defendants because of alleged tortious acts committed by them and by reason of which he lost his position with Snider Corporation. He alleged that these tortious acts caused the termination of a favorable business relation with General Motors Corporation. This is not an action based on the interference with an existing contractual relationship between Snider Chevrolet, Inc., and the United Steelworkers of America, nor is it an action directly involving an interference between Snider Chevrolet, Inc., and General Motors Corporation. There is no claim here for damages to a joint interest plaintiff may have had with Snider Chevrolet, Inc. Any recovery as a result of this action would go to plaintiff and not to Snider Chevrolet, Inc. Plaintiff is not suing in any representative capacity.

Defendants erroneously conclude that any interest of plaintiff to this action is jointly and not separately held with that of Snider Chevrolet, Inc. While it is true that under Rule 2227 of the Pennsylvania Rules of Civil Procedure, a person having only a joint interest in the subject matter of an action must be joined as a plaintiff, it does not follow that plaintiff's interest is inseparably joined with the interest of Snider corporation. The interest of Snider Chevrolet, Inc., might be based upon an interference with its contractual obligations with General Motors Corporation or with that of United Steelworkers of America; the interest of plaintiff is based upon the deprivation of a favorable business relation he had with Snider Chevrolet, Inc., irrespective of any contractual relationship between Snider corporation and General Motors Corporation. The cause of action owned by plaintiff is not shared nor jointly owned with Snider Chevrolet, Inc. Under

such circumstances, mandatory joinder is not required by the rules. Defendants, in effect, desire to penalize plaintiff for seeking his individual redress simply because a corporation which he does not control, in which he never had any voting interest, has not or does not seek to redress any wrong it may have against defendants.

Under the circumstances of this case, we do not believe that Rule 2227 of the Pennsylvania Rules of Civil Procedure is applicable and that, therefore, the mandatory joinder of Snider Chevrolet, Inc., is not warranted. Nor do we believe that Snider Chevrolet, Inc., is a necessary or indispensible party to the successful prosecution of this action. This objection is without merit and is, therefore, overruled.

For the reasons stated, the various objections of defendants to this complaint are dismissed.

### ORDER OF COURT

And now, to wit, December 29, 1964, after argument, and upon consideration thereof, the preliminary objections filed ex parte defendants are hereby dismissed and defendants are given 20 days from the date of this order in which to file an answer to the complaint.