**Keiper v. All-American Realty Company, Inc.**

*Peter J. O'Brien*, for plaintiff.
*Charles J. Vogt*, for defendant.

WILLIAMS, P. J., April 16, 1975—All-American Realty Company, Inc., defendant, has presented the instant preliminary objections to the complaint in trespass filed by plaintiff, Darwin Keiper. The factual background, uncontroverted for the purposes of these motions, shows that defendant is a Pennsylvania corporation and the owner of a real estate development known as "Arrowhead Lake." Defendant has sold lots in the development and, in all deeds to individual purchasers, has incorporated restrictions governing plans and specifications for home construction on the respective lots. Plaintiff is an individual engaged in the business of hauling and excavating.

Of two lot purchasers who desired to erect homes thereon, one engaged Quality Homes, Inc., as general contractor and the other engaged High Mountain Builders. Plaintiff expected, as subcontractor, to perform the excavations for these two job sites, but was prevented from doing so by the allegedly wrongful conduct of defendant, thereby sustaining a loss of the anticipated payments for excavation.

We now proceed to examine the question of

whether plaintiff has effectively pleaded a case for relief.

The complaint presents two theories for recovery: (1) tortious interference by defendant with contractual relations between plaintiff and Quality Homes, Inc. (count no. 1), and similar interference with respect to High Mountain Builders (count no. 2), and (2) alleged slander, charged in count no. 3 with reference back to the allegations set forth in counts nos. 1 and 2.

Demurring to counts nos. 1 and 2, counsel for defendant assert failure to state a cause of action because, after alleging interference with *existing contracts,* plaintiff has incorporated copies of the contracts (complaint, exhibits "A" and "B") which do not show that they ever were signed by the parties. Counsel for plaintiff correctly replies that it is not necessary to establish that the contractual relationship with which defendant is alleged to have interfered shall have matured to the point of becoming a legally enforceable contract. The elements of tortious interference were described by Mr. Justice (now Chief Justice) Jones in Birl v. Philadelphia Electric Co., 402 Pa. 297, 300, at 301, 167 A. 2d 472, at 474 (1960):

"At least since Lumley v. Gye (1853), 2 Ell. & Bl. 216, 1 Eng. Rul. Cas. 706, the common law has recognized an action in tort for an intentional, unprivileged interference with contractual relations. It is generally recognized that one has the right to pursue his business relations or employment free from interference on the part of other persons except where such interference is justified or constitutes an exercise of an absolute right: Restatement, Torts, Sec. 766. The special note to comment m. in sec. 766 points out: 'There are frequent expressions

in judicial opinions that "malice" is requisite for liability in the cases treated in this Section. But the context and course of decision make it clear that what is meant is not malice in the sense of ill will but merely purposeful interference without justification.' Our cases are in accord: Klauder v. Cregar, 327 Pa. 1, 7, 192 Atl. 667; Dora v. Dora, 392 Pa. 433, 437, 141 A. 2d 587.

"The elements of this tort of inducing breach of contract or refusal to deal, which must be averred in the complaint, are set forth in the Restatement, Torts, Sec. 766, which says, '. . . one who, without a privilege to do so, induces or otherwise purposely causes a third person *not to* (a) perform a contract with another, or (b) *enter into or continue a business relation with another,* is liable to the other for the harm caused thereby'. In other words, the actor must act (1) for the purpose of causing this specific type of harm to the Plaintiff, (2) such act must be unprivileged, and (3) the harm must actually result. . . ." (emphasis supplied).

Here, plaintiff has pleaded interference impinging upon his "business relationship"—be it represented by a duly executed contract or by a merely inchoate contract—with the two general contractors, thus satisfying, *to this extent,* the requirements of section 766. The pertinent paragraphs of count no. 1 (and the corresponding paragraphs, phrased in similar language, of count no. 2) read as follows:

"3. On or about July 22, 1974 [note: in count no. 2, September 11, 1974], Plaintiff entered into a contract with Quality Homes, Inc. [note: in count no. 2, High Mountain Builders] to furnish and supply equipment and materials necessary for excavation

of cellar, installation of septic system, and other excavation work for a home to be constructed at Defendant's development. A copy of said contract is attached hereto and marked Exhibit A [note: in count no. 2, Exhibit B].

"4. Quality Homes, Inc. [High Mountain Builders], pursuant to the restrictions made a part of all deeds from said Defendant's development, filed a complete set of plans and specifications for home construction. In addition, Defendant required Quality Homes [High Mountain Builders] to submit a list of all subcontractors hired to construct the home.

"5. Quality Homes, Inc. [High Mountain Builders] complied and listed Plaintiff as excavating contractor.

"6. Defendant notified Quality Homes, Inc. [High Mountain Builders] that the plans and specifications were approved with the exception of Plaintiff as excavating subcontractor.

"7. Quality Homes, Inc. [High Mountain Builders] subsequently notified Plaintiff that due to the restrictions placed upon Plaintiff by Defendant, that it would not be able to perform the contract as previously agreed.

"8. By rejecting Quality Homes' [High Mountain Builders'] choice of subcontractors, Defendant intentionally, wrongfully, maliciously, and without justification or privilege, interfered with, precluded, and prevented the consummation of the *existing* contract between Plaintiff and Quality Homes, Inc. [High Mountain Builders]." (emphasis supplied).

Although no fatal result follows from the circumstance that the allegations of existing con-

tracts are cancelled out by incorporating copies indicating that the contracts were not signed by the parties, it is a matter of importance because of the need to allege and prove a proper measure of damages. Where the parties have agreed, the resulting figures and prices are controlling; where they have not reached agreement, some other means of alleging and proving fair compensation must be found.

There is one defect, however, which requires sustaining the demurrer to counts nos. 1 and 2: failure to aver facts establishing the absence of justification for the interference. Although some courts have treated justification as an affirmative defense to be pleaded and proved by defendant: Hare v. Family Publications Service, Inc., 334 F. Supp. 953 (D. Md., 1971), the Pennsylvania rule treats absence of justification as an essential part of the cause of action: Birl v. Philadelphia Electric Co., supra; Capecci v. Liberty Corporation, 406 Pa. 197, 176 A. 2d 664 (1962). Barlow v. Brunswick Corporation, 311 F. Supp. 209 (E.D. Pa., 1970). This view was followed in a recent decision of the Pennsylvania Superior Court, Bahleda, Jr. v. Hankison Corporation, 228 Pa. Superior Ct. 153, 156, 323 A. 2d 121, 122, 123 (1974), where Judge Hoffman said:

"The presence of a privilege is not an affirmative defense, rather, the absence of such a privilege is an element of the cause of action which must be pleaded and proven by the plaintiff: Capecci v. Liberty Corp., 406 Pa. 197, 202, 176 A. 2d 664 (1962); Barlow v. Brunswick Corporation, 311 F. Supp. 209 (E.D. Pa., 1970)."

Although plaintiff has pleaded generally in paragraph 8, quoted supra (and in corresponding

paragraph 15 count no. 2), that defendant interfered "intentionally, wrongfully, maliciously, and without justification or privilege," this language, without allegations of specific supporting facts, is insufficient. Similar language was found insufficient in Glenn et al. v. Point Park College, 441 Pa. 474, 481, 482, 483, 272 A. 2d 895, 899, 900 (1971), cited by counsel for defendant. There, the lower court had sustained a demurrer and dismissed the complaint. On appeal, Mr. Justice Pomeroy said:

". . . The lower court stated in its opinion that 'there is no allegation that the defendant acted for specific purpose of causing harm to the plaintiffs.' We agree. Paragraph Twenty-first alleges that 'By negotiating directly with [Sheraton], the defendant intentionally, wrongfully, maliciously, fraudulently, deceitfully and without justification interfered with and precluded and prevented plaintiffs from entering into the relationship of brokers in the transaction with [Sheraton], thus depriving plaintiffs of their commission.' While this comes close to charging an intent to cause harm to plaintiffs, it stops short of doing so. It thus does not meet the test of Birl, supra, or the Restatement. See, Locker v. Hudson Coal Co., 87 Pa. D. & C. 264.

"The absence of privilege or justification in the tort under discussion is closely related to the element of intent. As stated by Harper & James, The Law of Torts, Sec. 6.11, at 513-14: '. . . where, as in most cases, the defendant acts at least in part for the purpose of protecting some legitimate interest which conflicts with that of the plaintiff, a line must be drawn and the interests evaluated. This process results in according or denying a privilege which, in turn, determines liability.' What is or is not privileged conduct in a given situation is not

susceptible of precise definition. Harper & James refer in general to inferences which 'are sanctioned by the "rules of the game" which society has adopted', and to 'the area of socially acceptable conduct which the law regards as privileged,' id. at 510, 511, and treat the subject in detail in §§6.12 and 6.13. See, also, the Restatement, §768.

"Whether the plaintiffs can cure the complaint in a third attempt may be doubted; nevertheless, we see nothing in the facts as averred which would be necessarily incompatible with stating a cause of action in trespass for the tortious interference with plaintiffs' prospective contractual relation with Sheraton. The right to amend should not be withheld where there is some reasonable possibility that it can be done successfully. Rule 1033 of the Pennsylvania Rules of Civil Procedure (12 P.S. Appendix); Quaker City v. Delhi-Warnock, 357 Pa. 307, 53 A. 2d 597 (1947); cf. Behrend v. Yellow Cab Co., 441 Pa. 105, 271 A. 2d 241 (1970). Accordingly, we affirm the order of the court below insofar as it sustains the preliminary objections, but reverse the order insofar as it dismisses the complaint, so that an amended complaint may be filed within 20 days from the date of the filing of this opinion if plaintiffs care to do so."

Next, counsel for defendant have demurred to count no. 3 of the complaint, consisting of a single paragraph which reads as follows:

"17. As a result of the *aforesaid* slander of the Defendant, many persons who, before and at the time of the Defendant's slander, had been used and accustomed to deal with the Plaintiff, have since the time of Defendant's slander, wholly neglected or refused to continue to do business with the Plain-

tiff to the latter's great special financial loss and damage." (emphasis supplied).

This paragraph does not explicitly set forth any defamatory communications, but incorporates by reference slanders conceived to have been set forth in counts nos. 1 and 2. There, however, the only communications attributed to defendant were the notices sent by defendant to the two general contractors indicating approval of all the subcontractors named in the lists submitted by them with the exception of plaintiff. It has not been made clear whether the indication of disapproval of plaintiff took the form of a positive statement, as "Plaintiff is disapproved," or the negative form of mere omission of plaintiff's name from the lists of those who positively were approved. There is no allegation that defendant went beyond the mere factual indication of disapproval and expressed any motivating reason, whether defamatory or otherwise. Truth is an absolute defense to a charge of slander: Corabi v. Curtis Publishing Company, 441 Pa. 432, 449, 273 A. 2d 899, 908 (1971). Since the communication to the general contractors by defendant of its disapproval of the employment of plaintiff as subcontractor, without further elaboration, was truthful, no actionable slander has been pleaded and the demurrer to count no. 3 will be sustained.

Next, counsel for defendant have moved to strike paragraphs 9 and 18 because they incorrectly claim, as damages, the full contract price set forth in exhibits "A" and "B". In Purdy v. Massey et al., 306 Pa. 288, 295, 159 Atl. 545, 547 (1932), Mr. Justice Drew stated the general principle governing measure of damages:

"In fixing compensation for damage resulting

from breach of a contract the general rule is that the injured party should be placed in the same position as if there had been no breach. The object of the law is that the injured party should be placed in as good position as if the contract had been kept."

Since plaintiff never was given the opportunity to perform these contracts, it is obvious that he was spared the expense of doing so, and an award to him of the full contract price would represent overcompensation. In Hudock v. Donegal Mutual Life Insurance Co., 438 Pa. 272, 277, 278, 264 A. 2d 668, 671 (1970), it is pointed out that the motion to strike is an appropriate method for dealing with the pleading of an improper measure of damages. The motion will be sustained.

The motion to strike count no. 3, consisting of a single paragraph (no. 17), also will be sustained as in violation of Pa. R.C.P. 1022:

"Every pleading shall be divided into paragraphs numbered consecutively. Each paragraph shall contain as far as practicable only one allegation."

The motion for more specific pleading, in counts nos. 1 and 2, of the time when defendant allegedly disapproved plaintiff as subcontractor, will be denied because this information is more properly within the knowledge of defendant.

The motion for more specific pleading, in counts nos. 1 and 2, of the time when the alleged contracts were to be executed will be denied. The alleged contract with Quality Homes, Inc., is dated July 22, 1974, and that with High Mountain Builders is dated September 11, 1974. Both contain as an expiration date December 31, 1974.

It is not necessary to rule on the motion for a more specific pleading of count no. 3 in light of our ruling

that this count be stricken because of the failure to plead the material in paragraph form.

## ORDER

And now, April 16, 1975, defendant's demurrer to counts nos. 1, 2, and 3 of plaintiff's complaint is sustained and plaintiff is granted leave to file an amended complaint within 20 days from the date of this order. The motion to strike paragraphs 9 and 18 of the complaint is sustained. The motion to strike count no. 3 is sustained. The two motions for more specific pleading of counts nos. 1 and 2 are denied.