**Bonzell HARRISON**

v.

**AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, the American Federation of State, County and Municipal Employees and the District Council #33 and Local 54.**

Civ. A. No. 76–1884.

United States District Court,
E. D. Pennsylvania.

June 7, 1978.

Bonzell Harrison, pro se.

Bruce M. Ludwig, Philadelphia, Pa., for defendant.

## MEMORANDUM

LUONGO, District Judge.

This is an action under Title I of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 411–415, for unlawful suspension and expulsion from a labor union. Jurisdiction is conferred by § 102 of the Act, 29 U.S.C. § 412. The case is before me on a motion by defendant Local 54 of the American Federation of State, County, and Municipal Employees (AFSCME) to dismiss the claim against it.

Plaintiff's *pro se* complaint, even though embellished by ninety-five exhibits, is vague and ambiguous, but, in essence, alleges the following. On August 18, 1969, while serving as president of Local 54, plaintiff "asserted the jurisdictional rights [of Local 54] against Local 590," a local which apparently consists of certain clerical workers. Complaint ¶ 1; *see id.*, Exhibit 5a. As a result of this "assertion of the jurisdictional rights against Local 590" (*id.* ¶ 2), the International President of AFSCME, Jerry Wurf, changed Local 54's jurisdiction (*see id.*, Exhibits 7a, 8a) and had plaintiff removed from the union. In a June 5, 1970 telegram, Wurf

> "issued a libelous and slanderous statement against the plaintiff's reputation, which barred the plaintiff from office, and at the same time prompt [sic] Local 54's Executive Board Members to bring criminal charges against the plaintiff on June 19, 1970, in accordance with Article V, Section 12 of the International Constitution, as to the aforesaid telegram, and eventually the Secretary-Treasurer of Local 54 improperly suspended the plaintiff from union membership on February

4, 1971, to annul the plaintiff's letter of August 8, 1969 of Local 54's jurisdiction for membership eligibility . . ., so that Mr. Jerry Wurf, International President could revoke Local 54's original Charter of August 1, 1968, and place Local 54's jurisdiction for membership eligibility inside the Cafeteria of the Dining Service Department of the University of Pennsylvania. . . ." *Id.* at ¶ 2.

The June 5 telegram stated that plaintiff was "engaging in conduct imminently dangerous to the welfare of the local union" and ordered plaintiff's suspension from the office of president. *Id.*, Exhibit 10a. After a hearing before an AFSCME judicial panel, which plaintiff repeatedly calls a "Kangaroo Court" (*id.* ¶ 3), plaintiff was expelled from the union on October 1, 1970. His appeal of that decision to the AFSCME International Convention was frustrated by Wurf, who changed the location of the convention from New York City to Houston, Texas, without notifying plaintiff. *Id.* ¶ 7. Plaintiff alleges a number of additional injuries, including deduction of union dues from his pay after he had been expelled (*id.* ¶¶ 9, 11), a forced "non-scheduled vacation for twenty (20) working days, without pay" (*id.* ¶ 10), and dismissal from his job (*id.*), all of which were related to his suspension and expulsion from the union. On page 14 of the complaint, plaintiff states:

"The essence of the complaint, is that the Plaintiff invoked District Court's jurisdiction under 29 U.S.C. Section 412, since the Plaintiff was improperly suspended from union membership for asserting the jurisdictional rights against Local 590[.]"

Plaintiff contends that the defendants' actions deprived him of rights secured under the First, Fifth, and Fourteenth Amendments to the Constitution in violation of §§ 101(a)(2), (5) and 102 of the LMRDA. He asks for compensatory and punitive damages and reinstatement in the union.

Since Local 54 has filed an answer to the complaint, I interpret its motion as one for judgment on the pleadings under Federal Rule 12(c). Local 54 contends that the action against it should be dismissed for failure to state a claim upon which relief can be granted because there are no allegations upon which the Local can be held liable and because the action is barred by the statute of limitations.

### A.   *The Merits*

Section 101(a) of the LMRDA, 29 U.S.C. § 411(a), provides:

.     .     .     .     .

(2) Freedom of speech and assembly.— Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

.     .     .     .     .

(5) Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

Section 102 of the Act, 29 U.S.C. § 412, provides:

Any person whose rights secured by the provisions of this title [29 U.S.C. §§ 411–415] have been infringed by any violation of this subtitle may bring a civil action in a district court of the United

States for such relief (including injunctions) as may be appropriate.

The complaint asserts that plaintiff was expelled from the union because of certain assertions made by him as to Local 54's jurisdiction. In its motion, Local 54 assumes *arguendo* that these allegations state a claim under the quoted sections of the LMRDA, but contends that the allegations apply only to AFSCME's International Union and not to Local 54, since the only persons alleged to have committed wrongful conduct are agents and officers of the International.

■ Review of the prolix allegations in the complaint contradicts Local 54's contention. The complaint contains numerous references to actions by Local 54, e. g., that "Local 54's Executive Board Members [brought] criminal charges against the plaintiff," which apparently affected his standing in the union, and that "eventually the Secretary-Treasurer of Local 54 improperly suspended the plaintiff from union membership." Local 54 analyzes the complaint and pertinent exhibits attached to it and reaches the conclusion that these contentions do not really mean what they say and that any claims against the Local are without basis. On a motion such as this, however, I must interpret the complaint in a manner most favorable to plaintiff. This is especially so where, as here, the complaint has been inarticulately drafted *pro se*. Interpreting the averments in plaintiff's favor, I conclude that these allegations state a claim against Local 54. This case is now on the trial list and will be called to trial shortly. That is the best forum in which to assess plaintiff's claim against Local 54.

B. *Statute of Limitations*

■ Because the LMRDA contains no statute of limitations of its own, claims under it are governed by the limitations period applicable to the most analogous claims under the law of the forum state. *Sewell v. Grand Lodge of International Association of Machinists*, 445 F.2d 545, 548–49 (5th Cir. 1971), *cert. denied*, 404 U.S. 1024, 92 S.Ct. 674, 30 L.Ed.2d 674 (1972). It therefore is necessary to analyze plaintiff's claim and Pennsylvania law to determine the closest analogy and then to analyze the Pennsylvania limitations statutes to determine what time period applies to that type of claim. *Id.* at 549; *cf. Meyers v. Pennypack Woods Home Ownership Association*, 559 F.2d 894, 899–903 (3d Cir. 1977) (applying this analysis to claims under 1866 Civil Rights Act).

■ The complaint states that its "essence" is that plaintiff "was improperly suspended from union membership for asserting the jurisdictional rights against Local 590." Local 54 contends, and I agree, that this type of claim sounds in tort rather than contract since it arises from breach of a statutory duty rather than breach of a contractual promise. *Accord, Sewell*, at 549–50; *see Meyers*, at 901. Ascertainment of the closest state tort analogy requires consideration of defendants' conduct, plaintiff's injury, and the relief requested. *Meyers*, at 901.

Local 54 does not identify any particular tort analogy, but instead contends that plaintiff's claim falls within a general class of torts relating to personal injury for which the limitations period under an 1895 statute, 12 Pa.Stat.Ann. § 34 (Purdon), is two years. It relies on cases, e. g., *MacMurray v. Board of Trustees*, 428 F.Supp. 1171, 1178–79 (M.D.Pa.1977), holding that civil rights actions for denial of free speech and association are analogous to personal injury claims for statute of limitations purposes. This is not just a civil rights action for denial of First Amendment rights, however; other interests are involved. The proper analysis in this case is to select a particular tort analogy in accordance with the criteria dictated by the Court of Appeals in *Meyers*.

Under *Meyers*, one of the factors to be considered is the conduct of defendants. In this case, that conduct was the suspension and later expulsion of plaintiff from union membership. Plaintiff's exercise of his right of free speech was the alleged reason for this action, but it was not the actionable

conduct itself. The conduct did include defamatory statements by at least one person associated with defendants, but the complaint does not seek recovery for the defamation; it merely seeks redress for plaintiff's removal from the union, which was triggered in part by the alleged defamation. The conduct to focus on, therefore, is the union expulsion.

As to the second factor set forth in *Meyers*, plaintiff's injury was the severance of his ties with the union. He was denied freedom of speech and association, but that denial only occurred as a result of the fact that his expulsion from the union rendered him incapable of expressing his views on union matters. The injury to his free speech rights therefore was only an element of the larger harm of union expulsion.

The third factor to be considered is the relief requested. Plaintiff seeks damages and equitable relief in the form of reinstatement in the union. The request for reinstatement emphasizes the fact that severance of plaintiff's ties with the union is the gravamen of this claim. The analogous tort should be one which could provide remedies similar to those plaintiff requests.

■ A survey of Pennsylvania tort law in light of these three factors discloses that the closest state law analogy to plaintiff's LMRDA claim would be an action for interference with business associational ties. In *Meyers*, the Court of Appeals described this general category of torts as follows:

> [W]e turn our attention to another group of torts recognized by Pennsylvania law—torts such as fraudulent interference with contractual rights[,] wrongful interference with another's business, violation of seniority rights, and breach of an express trust. All these torts involve the wrongful interference with another's financial, commercial or business rights. A victim of one of these torts suffers not so much from an emotional or mental trauma as he does from the actual denial of his right to lawfully pursue his business, employment, or personal affairs.

559 F.2d at 902 (footnotes omitted).

The Court noted that emotional or mental trauma—"injury to [the plaintiff's] 'feelings' "—was encompassed within the broader realm of this cause of action. *See id.* The elements of this tort category are difficult to define with precision. *See generally* Restatement of Torts § 766 (1939), *adopted in Birl v. Philadelphia Electric Co.*, 402 Pa. 297, 300–01, 167 A.2d 472, 474 (1960); Restatement (Second) of Torts §§ 766–774B (Tent. Draft No. 23, 1977). Generally, however, as the Court of Appeals stated, the category deals with intentional interference with advantageous economic relations of the plaintiff. *See* Rest.2d, *supra*, Introductory Note to Ch. 37. Commission of the tort entitles the plaintiff both to damages and injunctive relief. *See id.* § 774A & Comment *e*; *id.* §§ 933–951 (Tent. Draft No. 22, 1976).

As already noted, the thrust of plaintiff's claim is that he was wrongfully expelled from his union. The expulsion terminated a relationship advantageous to him and related to his employment. Admittedly, comparison of plaintiff's claim with the economic tort I have discussed does not produce a precise fit. There may be some question whether union membership is the type of relationship protected by the tort. *See generally* Rest.2d, § 774B & Special Note on Interference with Noncommercial Benefits. The fact that the interference was by the union itself—a party to the disrupted relationship with plaintiff—may place the case beyond the realm of tort law and into the category of assumpsit. *See generally George A. Davis, Inc. v. Camp Trails Co.*, 447 F.Supp. 1304, 1308–12 (E.D. Pa.1978). The question is not whether plaintiff's allegations are actionable under state law, however. The search is for an *analogy*, for a general type of claim which most closely resembles the federal cause of action plaintiff asserts. Thus, in *Meyers, supra*, the Court of Appeals selected interference with business relations as an appropriate analogy even though, similarly to this case, the wrongdoer was a potential party to the prospective business relationship that was disrupted. *See* 559 F.2d at 896–97, 902. Considering plaintiff's allegations, I con-

clude that interference with business relations is the appropriate tort analogy to be applied.

The next question is what statute of limitations applies to this tort in Pennsylvania. I need not engage in an in-depth discussion of this issue, for in *Meyers*, the Court of Appeals held that such claims are governed by the six-year period of the Statute of Limitations of 1713, 12 Pa.Stat.Ann. § 31 (Purdon), which applies to "actions of trespass" and "upon the case." It rejected a contention that the 1895 personal injury statute, 12 Pa.Stat.Ann. § 34 (Purdon), controlled. 559 F.2d at 902–03.

There seems to be some dispute as to when plaintiff's cause of action accrued. The earliest date propounded by Local 54 is October 1970. Defendant's Memorandum in Support of Motion to Dismiss, at 5. There also is disagreement as to the precise date plaintiff instituted suit. Each of the suggested dates is in early June 1974, and June 14, the date the complaint was filed, is the best choice (see Fed.R.Civ.P. 3). Since the six-year limitations period did not run until October 1976 at the earliest, this action is not time-barred. The motion to dismiss on statute of limitations grounds therefore will be denied.